# EXHIBIT A

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

MAY 2015

E-Filing Number: 1505049403

**002703**

| | |
|---|---|
| PLAINTIFF'S NAME<br>MATTHEW MCNEAL | DEFENDANT'S NAME<br>ARCELORMITTAL USA, INC. |
| PLAINTIFF'S ADDRESS<br>218 MELISSA DRIVE<br>COATESVILLE PA 19320 | DEFENDANT'S ADDRESS<br>139 MODENA DRIVE<br>COATESVILLE PA 19320 |
| PLAINTIFF'S NAME<br>CHRISTINE MCNEAL | DEFENDANT'S NAME<br>ARCELORMITTAL PLATE, LLC |
| PLAINTIFF'S ADDRESS<br>218 MELISSA DRIVE<br>COATESVILLE PA 19320 | DEFENDANT'S ADDRESS<br>139 MODENA DRIVE<br>COATESVILLE PA 19320 |
| PLAINTIFF'S NAME<br>SEAN FLOOD | DEFENDANT'S NAME<br>ARCELORMITTAL USA, LLC |
| PLAINTIFF'S ADDRESS<br>514 WHEELER BOULEVARD<br>OXFORD PA 19363 | DEFENDANT'S ADDRESS<br>1 SOUTH DEARBORN STREET<br>CHICAGO IL 60603 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 5 | 23 | [X] Complaint    [ ] Petition Action    [ ] Notice of Appeal<br>[ ] Writ of Summons    [ ] Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| [ ] $50,000.00 or less<br>[X] More than $50,000.00 | [ ] Arbitration<br>[X] Jury<br>[ ] Non-Jury<br>[ ] Other: | [ ] Mass Tort<br>[ ] Savings Action<br>[ ] Petition | [ ] Commerce<br>[ ] Minor Court Appeal<br>[ ] Statutory Appeals | [ ] Settlement<br>[ ] Minors<br>[ ] W/D/Survival |

CASE TYPE AND CODE
20 - PERSONAL INJURY - OTHER

STATUTORY BASIS FOR CAUSE OF ACTION

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

**FILED
PRO PROTHY**

MAY 22 2015

**D. SAVAGE**

IS CASE SUBJECT TO
COORDINATION ORDER?
    YES      NO

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: <u>MATTHEW MCNEAL , CHRISTINE MCNEAL ,</u>
Papers may be served at the address set forth below. <u>SEAN FLOOD , MARK TARLOSKI , STEPHA</u>

| | |
|---|---|
| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY<br>ROBERT J. MONGELUZZI | ADDRESS<br>ONE LIBERTY PLACE 52ND FLOOR<br>1650 MARKET ST.<br>PHILADELPHIA PA 19103 |
| PHONE NUMBER<br>(215) 496-8282 | FAX NUMBER<br>(215) 496-0999 | |
| SUPREME COURT IDENTIFICATION NO.<br>36283 | E-MAIL ADDRESS<br>VSmith@smbb.com |
| SIGNATURE OF FILING ATTORNEY OR PARTY<br>ROBERT MONGELUZZI | DATE SUBMITTED<br>Friday, May 22, 2015, 05:09 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

## COMPLETE LIST OF PLAINTIFFS:

1. MATTHEW MCNEAL
   218 MELISSA DRIVE
   COATESVILLE PA 19320
2. CHRISTINE MCNEAL
   218 MELISSA DRIVE
   COATESVILLE PA 19320
3. SEAN FLOOD
   514 WHEELER BOULEVARD
   OXFORD PA 19363
4. MARK TARLOSKI
   136 MAPLE STREET
   COATESVILLE PA 19320
5. STEPHANIE TARLOSKI
   136 MAPLE STREET
   COATESVILLE PA 19320

## COMPLETE LIST OF DEFENDANTS:

1. ARCELORMITTAL USA, INC.
   139 MODENA DRIVE
   COATESVILLE PA 19320
2. ARCELORMITTAL PLATE, LLC
   139 MODENA DRIVE
   COATESVILLE PA 19320
3. ARCELORMITTAL USA, LLC
   1 SOUTH DEARBORN STREET
   CHICAGO IL 60603
4. SIEMANS ENERGY & AUTOMATION, INC.
   501 TECHNOLOGY DRIVE
   CANONSBURG PA 15317
5. SIEMENS VAI SERVICES, LLC
   81 E. WASHURN STREET
   NEW LONDON OH 44851
6. AMERIFAB, INC.
   2075 S. BELMONT AVE.
   INDIANAPOLIS IN 46221
7. PROCESS TECHNOLOGY INTERNATIONAL, INC.
   4950 SOUTH ROYAL ATLANTA DR.
   TUCKER GA 30084
8. FRANK W. HAKE, INC.
   1500 CHESTER PIKE
   CRUM LYNNE PA 19022
9. ABB, INC.
   29801 EUCLID AVENUE
   WICKLIFFE OH 44092
10. S.D. MYERS INC.
    180 SOUTH AVENUE
    TALLMADGE OH 44278
11. GENERAL ELECTIC CO.
    1515 MARKET STREET, SUITE 1210
    PHILADELPHIA PA 19102
12. AMIGE LLC
    ALIAS: AMI GE  USA
    14408 MAQUILA LOOP ITC INDUSTRIAL PAK
    LAREDO TX 78045
13. ENERG TEST, LLC
    204 GALE LANE
    KENNETT SQUARE PA 19348
14. WESTINGHOUSE ELECTRIC COMPANY, LLC
    4250 NORTHERN PIKE
    MONROEVILLE PA 15146
15. WESTINGHOUSE ELECTRIC CORP.
    11 STANWIX STREET
    PITTSBURGH PA 15222
16. TENOVA GOODFELLOW, INC.
    6711 MISSISSAUGHA RD.
    MISSISSAUGA  L5N6J5
17. TENOVA CORE, INC.

ALIAS: POMINI, INC.
CHERINGTON CORPORATE CENTER 100
CORAOPOLIS PA 15108
18. SCHNEIDER ELECTRIC USA, INC.
S. 1415 S. ROSELLE ROAD
PALATINE IL 60067
19. LEED & NORTHRUP COMPANY
METALLOY INDUSTRIAL ESTATE 23 FORGE LANE WEST MIDLANDS
MINWORTH  B761AH
20. J.B. FURNACE ENGINEERING LTD
METALLOY INDUSTRIAL ESTATE 23 FORGE LANE WEST MIDLANDS
MINWORTH   B761AH
21. PROCESS INSTRUMENTS, INC.
615 E. CARSON STREET
PITTSBURGH PA 15203
22. HERAEUS ELECTRO-NITE CO.
1 SUMMIT SQUARE CENTER
LANGHORNE PA 19047
23. HERAEUS ELECTRO-NITE CO., LLC
ONE SUMMIT SQUARE, SUITE 100
LANGHORNE PA 19047

**SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.**
BY: ROBERT J. MONGELUZZI/ANDREW R.
DUFFY/JEFFREY P. GOODMAN
IDENTIFICATION NO.: 36283/77121/309433
52ND FLOOR
1650 MARKET STREET
PHILADELPHIA, PA 19103
(215) 496-8282

ATTORNEYS FOR
PLAINTIFFS
Matthew and Christine McNeal

**GALFAND BERGER, LLP**
BY: RICHARD M. JUREWICZ
IDENTIFICATION NO.: 39426
23RD FLOOR
1818 MARKET STREET
PHILADELPHIA, PA 19103
(215) 665-1600

ATTORNEY FOR
PLAINTIFFS,
Mark, Talorski, Stephanie
Talorski and Sean Flood

---

**MATTHEW McNEAL and CHRISTINE McNEAL**
218 Melissa Drive
Coatesville, PA 19320

*And*

**SEAN FLOOD**
514 Wheeler Boulevard
Oxford, Pennsylvania, 19363

*And*

**MARK TARLOSKI and STEPHANIE TARLOSKI**
136 Maple Street
Coatesville, PA 19320

*Plaintiffs*

**v.**

**ARCELORMITTAL USA , INC.**
139 Modena Drive
Coatesville, PA 19320

*And*

**ARCELORMITTAL PLATE LLC**

---

**PHILADELPHIA COUNTY
COURT OF COMMON PLEAS
LAW DIVISION**

**TERM, 2015**

NO.

**JURY TRIAL DEMANDED**

139 Modena Drive
Coatesville, PA 19320

   *And*

**ARCELORMITTAL USA, LLC**
1 South Dearborn Street
Chicago, IL 60603

   *And*

**SIEMENS ENERGY & AUTOMATION, INC.**
501 Technology Drive
Canonsburg, PA 15317

   *And*

**SIEMENS VAI SERVICES, LLC**
81 E. Washburn Street
New London, OH 44851

   *And*

**AMERIFAB, INC.**
2075 S. Belmont Ave.
Indianapolis, IN 46221

   *And*

**PROCESS TECHNOLOGY INTERNATIONAL, INC.**
4950 South Royal Atlanta Drive
Tucker, GA 30084

   *And*

**FRANK W. HAKE, INC.**
1500 Chester Pike
Crum Lynne, PA 19022

   *And*

**ABB, INC.**
29801 Euclid Ave.
Wickliffe, OH 44092

2

*And*

**S.D. MYERS INC.**
180 South Avenue
Tallmadge, OH 44278

*And*

**GENERAL ELECTRIC CO.**
1515 Market Street, Suite 1210
Philadelphia, PA 19102

*And*

**AMIGE LLC d/b/a AMI GE – USA**
14408 Maquila Loop
ITC Industrial Park
Laredo, Texas 78045

*And*

**ENERG TEST, LLC**
204 Gale Lane
Kennett Square, PA 19348

*And*

**WESTINGHOUSE ELECTRIC
COMPANY, LLC**
4350 Northern Pike
Monroeville, PA 15146

*And*

**WESTINGHOUSE ELECTRIC CORP.**
11 Stanwix Street
Pittsburgh, PA 15222

*And*

**TENOVA GOODFELLOW, INC.**
6711 Mississaugha Rd.
Mississauga, ON L5N 6J5, Canada

*And*

3

**TENOVA CORE, INC. a/k/a POMINI, INC.**
Cherrington Corportate Center 100
Coraopolis, PA 15108

*And*

**SCHNEIDER ELECTRIC USA, INC.**
S. 1415 S. Roselle Road
Palatine, IL 60067

*And*

**LEEDS & NORTHRUP COMPANY**
Metalloy Industrial Estate
23 Forge Lane
Minworth, West Midlands
B76 1AH
United Kingdom

*And*

**J B FURNACE ENGINEERING LTD.**
Metalloy Industrial Estate
23 Forge Lane
Minworth, West Midlands
B76 1AH
United Kingdom

*And*

**PROCESS INSTRUMENTS, INC.**
615 E. Carson Street
Pittsburgh, PA 15203

*And*

**HERAEUS ELECTRO-NITE CO.**
1 Summit Square Center
Langhorne, PA 19047

*And*

**HERAEUS ELECTRO-NITE CO., LLC**
One Summit Square, Suite 100
Langhorne, PA 19047

4

<hr>

**_Defendants_**

NOTICE

"You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgement may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

"YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL and INFORMATION SERVICE
One Reading Center
Philadelphia, Pennsylvania 19107
(215) 238-1701"

AVISO

"Le han demandado en corte. Si usted quiere defenderse contra las demandas nombradas en las páginas siguientes, tiene veinte (20) días, a partir de recibir esta demanda y la notificación para entablar personalmente o por un abogado una comparecencia escrita y también para entablar con la corte en forma escrita sus defensas y objeciones a las demandas contra usted. Sea avisado que si usted no se defiende, el caso puede continuar sin usted y la corte puede incorporar un juicio contra usted sin previo aviso para conseguir el dinero demandado en el pleito o para conseguir cualquier otra demanda o alivio solicitados por el demandante. Usted puede perder dinero o propiedad u otros derechos importantes para usted.

USTED DEBE LLEVAR ESTE DOCUMENTO A SU ABOGADO INMEDIATAMENTE. SI USTED NO TIENE ABOGADO (O NO TIENE DINERO SUFICIENTE DE PARGAR A UN ABOGADO), VAYA EN PERSONA O LLAME POR TELEFONO LA OFICINA NOMBRADA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL. ESTA OFICINA PUEDE PROPORCIONARLE LA INFORMACION SOBRE CONTRATAR A UN ABOGADO.

SI USTED NO TIENE DINERO SUFICIENTE PARA PAGAR A UN ABOGADO, ESTA OFICINA PUEDE PROPORCIONARLE INFORMACION SOBRE AGENCIAS QUE OFRECEN SERVICIOS LEGALES A PERSONAS QUE CUMPLEN LOS REQUISITOS PARA UN HONORARIO REDUCIDO O NINGUN HONORARIO.

ASOCIACION DE LICENCIADOS DE FILADELFIA
SERVICO DE REFERENCA E INFORMACION LEGAL
One Reading Center
Filadelfia, Pennsylvania 19107
Telefono: (215) 238-1701"

## COMPLAINT

1.     On May 23, 2013, Electric Arc Furnace D ("EAF D") at the ArcelorMittal Coatesville Plant located at 139 Modena Drive ("The Steel Plant") exploded and spewed molten metal on Plaintiffs Matt McNeal, Sean Flood, and Mark Tarloski.

2.     At that time, Plaintiffs were lawfully present business invitees at the steel plant.

3.     Plaintiffs were working as the crew loaded slag into EAF D so that it could be melted into slag and used in steel making operations.

4.     During the operation of EAF D a reaction occurred in which excessive amounts of carbon oxidized and the batch exploded and caused severe and debilitating injuries to Plaintiffs.

## PARTIES AND JURISDICTION

5.     Plaintiff, Matthew McNeal, is an adult citizen of the Commonwealth of Pennsylvania residing at the above-captioned address.

6.     Plaintiff, Christine McNeal, is the wife of Matthew McNeal and an adult citizen of the Commonwealth of Pennsylvania residing at the above-captioned address.

5

7.     Plaintiff, Sean Flood, is an adult citizen of the Commonwealth of Pennsylvania residing at the above-captioned address.

8.     Plaintiff, Mark Tarloski, is an adult citizen of the Commonwealth of Pennsylvania residing at the above-captioned address.

9.     Plaintiff, Stephanie Tarloski, is the wife of Mark Tarloski and an adult citizen of the Commonwealth of Pennsylvania residing at the above-captioned address.

10.     Defendant, Arcelormittal USA, Inc., ("AM USA") is a corporation organized and existing under the laws of the State of Delaware, with a place of business located at 139 Modena Drive, Coatesville, PA 19320, that purposely established significant contacts in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County.

11.     Defendant, Arcelormittal Plate, LLC, ("AM Plate") is a corporation organized and existing under the laws of the State of Delaware, with a place of business located at 139 Modena Drive, Coatesville, PA 19320, that purposely established significant contacts in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County.

12.     Defendant, Arcelormittal USA, LLC, ("AM USA LLC") is a limited liability company organized and existing under the laws of the State of Delaware, with a place of business located at 1 S. Dearborn Street, Chicago, IL 60603, that purposely established significant contacts in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County

6

13.     Defendant, Siemens Energy & Automation, Inc., is a corporation organized and existing under the laws of the State of Delaware, with a place of business located at 501 Technology Drive, Canonsburg, PA 15317, that purposely established significant contacts in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County.

14.     Defendant, Siemens VAI Services, LLC, is a limited liability company organized and existing under the laws of the State of Delaware, with a place of business located at 81 E. Washburn Street, New London, OH 44851, that purposely established significant contacts in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County

15.     Defendant, Amerifab, Inc., is a corporation existing under the laws of the State of Indiana, with their principal place of business located at 2075 S. Belmont Ave., Indianapolis, IN 46221, that purposely established significant contacts in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County.

16.     Defendant, Process Technology International, Inc. is a corporation organized and existing under the laws of the State of Georgia, with a place of business located at 4950 South Royal Atlanta Drive, Tucker, GA 30084, that purposely established significant contacts in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County.

17.     Defendant, Frank W. Hake, Inc. is a corporation with a place of business located at 1500 Chester Pike, Crum Lynne, PA 19022, that purposely established significant contacts in

7

Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County.

18.     Defendant, ABB, Inc., is a corporation organized and existing under the laws of the State of Delaware, with a place of business located at 29801 Euclid Ave, Wickliffe, OH 44092, that purposely established significant contacts in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County.

19.     Defendant, S.D. Myers, Inc., is a corporation organized and existing under the laws of the State of Ohio, with a place of business located at 180 South Avenue, Tallmadge, OH 44278, that purposely established significant contact in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County.

20.     Defendant, General Electric Company, is a corporation with a place of business located at 1515 Market Street, Suite 1210, Philadelphia, PA 19101, that purposely established significant contact in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County.

21.     Defendant, AMIGE LLC d/b/a AMI GE – USA, is a limited liability company with a place of business located at 14498 Manquila Loop, ITC Industrial Park, Laredo, TX 78045, that purposely established significant contact in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County

8

22.     Defendant, Energ Test, LLC, is a limited liability company with a place of business located at 204 Gale Lane, Kennett Square, PA 19348, that purposely established significant contact in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County.

23.     Defendant, Westinghouse Electric Company, LLC, is a limited liability company with a place of business located at 4350 Northern Pike, Monroeville, PA 15146, that purposely established significant contact in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County.

24.     Defendant, Westinghouse Electric Corp., is a corporation with a place of business located at 11 Stanwix Street, Pittsburgh, PA 15222, that purposely established significant contact in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County.

25.     Defendants Westinghouse Electric Company, LLC and Westinghouse Electric Corp. are hereinafter referred to, collectively, as "Westinghouse" or "the Westinghouse Defendants."

26.     Defendants Tenova Goodfellow, Inc. and/or Tenova Core Inc. and/or Pomini Inc. ("Tenova") are corporations with offices at the above captioned addresses that purposely established significant contact in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County.

9

27.    Defendant, Schneider Electric USA, Inc., is a corporation organized and existing under the laws of the State of Delaware with a place of business located at 1415 S. Roselle Road, Palantine, IL 60067, that purposely established significant contact in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County.

28.    Defendant Leeds & Northrup Company is a corporation organized and existing under the laws of the State of Delaware with a place of business located at Metalloy Industrial Estate, 23 Forge Lane, Minworth, West Midlands, B76 1AH, United Kingdom, that purposely established significant contact in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County.

29.    Defendant J B Furnace Engineering Ltd. is a corporation organized and existing under the laws of the State of Delaware with a place of business located at Metalloy Industrial Estate, 23 Forge Lane, Minworth, West Midlands, B76 1AH, United Kingdom, that purposely established significant contact in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County.

30.    Defendant Process Instruments, Inc. is a corporation organized and existing under the laws of the State of Delaware with a place of business located at 615 E. Carson Street, Pittsburgh, PA 15203, that purposely established significant contact in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County.

10

31.     Defendant Heraeus Eletro-Nite Co. is a corporation organized and existing under the laws of the State of Delaware with a place of business located at 1 Summit Square Center, Langhorne, PA 19047 that purposely established significant contact in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County.

32.     Defendant Heraeus Eletro-Nite Co., LLC is a limited liability company organized and existing under the laws of the State of Delaware with a place of business located at One Summit Square, Suite 100, Langhorne, PA 19047 that purposely established significant contact in Pennsylvania, has carried out, and continues to carry out, substantial, continuous, and systematic business activities in Pennsylvania, and regularly conducted business in Philadelphia County

33.     At all relevant times defendants acted by and through various employees, agents, and implied agents who were acting within the scope and course of their authority for defendants.

34.     The substantial business activities of defendants within the city and county of Philadelphia as well as the appropriate and convenient nature of Philadelphia as a forum for an explosion of EAF D at the Coatesville Plant has already been litigated and the Philadelphia County Court of Common Pleas has already determined that Philadelphia is a proper and convenient forum for litigation arising out of an explosion of EAF D and injuries to the crew.

### THE MAY 26, 2007 EXPLOSION OF EAF D

35.     The dangers and hazards associated with EAF D had been known to defendants for years, yet outrageously ignored.

11

36.     On May 26, 2007, William Solen, Shaun Rogers, and John Winski were operating EAF D at the Arcelormittal Plant.

37.     EAF D exploded and as a result, Shawn Rogers, has become a severely burned quadriplegic; William Solen, has a broken leg and 2nd and 3rd degree burns on over 30% of his body; and John Winski, died after suffering 2nd and 3rd degree burns on over half his body.

38.     Despite debilitating injuries to two workers and an agonizingly painful death to another worker, defendants failed to improve the safety of the EAF furnace and continued to put workers in harm's way.

39.     In connection with the litigation that flowed from the May 26, 2007 explosion, Defendant, AM USA's Vice President of Operations admitted that AM USA was responsible for ensuring the health and safety of the men and women that worked in the plant.

40.     Numerous other AM USA employees admitted that safety at the subject plant was a shared responsibility between Defendants, AM USA and AM Plate.

41.     The responsibility of Defendant AM USA for the safe functioning of EAF D has already been established.

42.     The outrageous and inexcusable failures of Defendant AM USA to remedy the unsafe condition of EAF D despite the same furnace having exploded six years earlier requires an award of punitive damages is warranted based on Defendants AM USA and AM Plate LLC's deliberate, intentional and reckless disregard to the safety of Plaintiffs, McNeal, Talorski and Floor, and other workers at the Coatesville plant.

## **INJURIES AND DAMAGES**

43.     As a direct and proximate result of the carelessness, negligence, gross negligence, recklessness, strict liability, and other liability-producing conduct of defendants, and each of

Case ID: 15050270

them, plaintiff, Matt McNeal, suffered serious, severe, disabling, and injuries including, but not limited to second and third degree burns over approximately 68% total body surface area, burns to the face, significant damage to his nose and right ear, and deformities of the left ear. Other areas that were significantly burned were Matt's upper extremities, torso, portions of his lower extremities, and buttocks. Matt has also been caused to suffer psychiatric and emotional injuries, and other injuries the full extent of which are not yet known, and some or all of which may be permanent in nature.

    a.  As a direct and proximate result of the conduct of Defendants, Plaintiff Matt McNeal has in the past required, continues to require, and will in the future require, medical treatment and care, and has in the past, continues presently, and will in the future incur the cost of medicines, medical care, hospitalizations, treatment, future operations, testing, and rehabilitation and attempt to alleviate and/or cure his condition.

    b.  As a direct and proximate result the conduct of Defendants, Plaintiff Matt McNeal has in the past, and continues to suffer pain, scarring, disfigurement, loss of independence, mental anguish, humiliation, embarrassment, fear, loss of well-being, inability to enjoy the normal pleasures of life, and restrictions on his ability to engage in normal activities and pleasures of life, and other intangible losses.

    c.  As a direct approximate result of the conduct of the Defendants, Plaintiff Matt McNeal has been prevented and will be prevented in the future from performing his usual duties, activities, occupations and avocations and has suffered a loss of earnings and will suffer, in the future, a loss of earning capacity.

13

Case ID: 15050270

44.    As a direct and proximate result of the carelessness, negligence, gross negligence, recklessness, strict liability, and other liability-producing conduct of defendants, and each of them, plaintiff, Sean Flood, suffered serious, severe, disabling, and injuries including, but not limited to second and third degree burns over approximately 16% total body surface area and inhalation injuries, third degree burns to face, including most of his nose, bilateral knees and right upper extremity.    Second degree burns through scalp, hair and left upper extremity, scarring, psychiatric and emotional injuries, post-traumatic stress disorder, despair, situational anxiety, phobia of fire, heat and loud noises and other injuries the full extent of which are not yet known, and some or all of which may be permanent in nature.

    a.    As a direct and proximate result of the conduct of Defendants, Plaintiff Sean Flood has in the past required, continues to require, and will in the future require, medical treatment and care, and has in the past, continues presently, and will in the future incur the cost of medicines, medical care, hospitalizations, treatment, future operations, testing, and rehabilitation and attempt to alleviate and/or cure his condition.

    b.    As a direct and proximate result the conduct of Defendants, Plaintiff Sean Flood has in the past, and continues to suffer pain, scarring, disfigurement, loss of independence, mental anguish, humiliation, embarrassment, fear, loss of well-being, inability to enjoy the normal pleasures of life, and restrictions on his ability to engage in normal activities and pleasures of life, and other intangible losses.

    c.    As a direct approximate result of the conduct of the Defendants, Plaintiff Sean Flood has been prevented and will be prevented in the future from performing his

14

usual duties, activities, occupations and avocations and has suffered a loss of earnings and will suffer, in the future, a loss of earning capacity.

45.   As a direct and proximate result of the carelessness, negligence, gross negligence, recklessness, strict liability, and other liability-producing conduct of defendants, and each of them, plaintiff, Mark Tarloski, suffered serious, severe, disabling, and injuries including, but not limited to, post-traumatic stress disorder, second degree burns to 2% of total body surface area including back of head and neck, scarring, psychiatric and emotional injuries, and other injuries the full extent of which are not yet known, and some or all of which may be permanent in nature.

a.   As a direct and proximate result of the conduct of Defendants, Plaintiff Mark Tarloski has in the past required, continues to require, and will in the future require, medical treatment and care, and has in the past, continues presently, and will in the future incur the cost of medicines, medical care, hospitalizations, treatment, future operations, testing, and rehabilitation and attempt to alleviate and/or cure his condition.

b.   As a direct and proximate result the conduct of Defendants, Plaintiff Mark Tarloski has in the past, and continues to suffer pain, scarring, disfigurement, loss of independence, mental anguish, humiliation, embarrassment, fear, loss of well-being, inability to enjoy the normal pleasures of life, and restrictions on his ability to engage in normal activities and pleasures of life, and other intangible losses.

c.   As a direct approximate result of the conduct of the Defendants, Plaintiff Mark Tarloski has been prevented and will be prevented in the future from performing

15

his usual duties, activities, occupations and avocations and has suffered a loss of earnings and will suffer, in the future, a loss of earning capacity.

46.    Defendants are jointly and severally responsible for the injuries and damages as described above as well as punitive damages for their outrageous conduct.

## COUNT 1- NEGLIGENCE

## PLAINTIFFS V. ARCELORMITTAL USA, INC., ARCELORMITTAL PLATE, LLC and ARCELORMITTAL USA, LLC

47.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

48.    At all relevant times, defendants Arcelormittal USA, Inc., Arcelormittal Plate, LLC, and Arcelormittal USA, LLC, owned, operated, and/or controlled the steel plant where the explosion injured plaintiffs, and as such, owed a duty to those persons lawfully entered upon the premises, including plaintiffs, as business invitees, to provide a reasonably safe environment, free from hazards and unseen dangers and conditions.

49.    At all relevant times, defendants Arcelormittal USA, Inc., Arcelormittal Plate, LLC, and Arcelormittal USA, LLC, undertook the supervision of the work being performed at the steel plant, and in conjunction therewith established plans, recommendations, designs and specifications for the performance of the work.

50.    Defendants Arcelormittal USA, Inc., Arcelormittal Plate, LLC, and Arcelormittal USA, LLC, having undertaken the operation, inspection, maintenance, and supervision of the furnace, owed a duty to those persons engaged in the performance of the furnace-related work, including, to provide a reasonably safe environment, free from unreasonable hazards, with adequate and appropriate safety procedures, within which to perform the work on the project.

Case ID: 15050270

51.   Defendants Arcelormittal USA, Inc., Arcelormittal Plate, LLC, and Arcelormittal USA, LLC, failed to enact or implement, and/or removed, neglected, or ignored, furnace-related safety procedures, inspection procedures, operating procedures, training programs, safety devices, error-detection devices, water-flow devices, carbon detection devices and-or other monitoring devices that would have prevented the furnace explosion, thereby causing injuries to plaintiffs.

52.   Although Arcelormittal USA, Inc., Arcelormittal Plate, LLC, and Arcelormittal USA, LLC, knew or should have known of the hazardous condition of the furnace, defendant(s) permitted such hazardous conditions to exist and/or failed to warn about and/or eliminate those hazardous conditions and/or failed to reasonably discover the hazardous conditions.

53.   In the alternative, Defendant Arcelormittal USA, Inc., Arcelormittal Plate, LLC, and Arcelormittal USA, LLC, was the parent company, controlling company, employer of safety-related personnel, and/or otherwise exercised sufficient control over the steel plant operations, thereby having a duty to plaintiffs to provide a safe place to work, free of hazards; defendants breached that duty and caused or contributed to the explosion.

54.   Defendant Arcelormittal USA, Inc., Arcelormittal Plate, LLC, and Arcelormittal USA, LLC was (were) careless, negligent and reckless in numerous respects, including without limitation the following:

      (a)   failing to maintain the electric arc furnace area free from unreasonable hazards and unforeseen dangerous conditions;

      (b)   failing to properly inspect the electric arc furnace area for the presence of hazards and dangerous conditions;

      (c)   failing to adequately maintain the electric arc furnace on the premises;

17

(d)    failing to inspect and maintain the electric arc furnace on the premises;

(e)    failing to maintain the electric arc furnace area in a safe manner;

(f)    failing to maintain the electric arc furnace area in accordance with industry standards;

(g)    failing to warn of the safety hazards and unseen dangerous conditions then and there existing on the premises despite defendant's knowledge of such hazards;

(h)    failing to employ and select only qualified and competent individuals to inspect the furnace for hazardous conditions;

(i)    allowing a dangerous and hazardous condition to exist which defendant knew or should have known would cause injury and/or death to others, such as plaintiffs, as business invitees on the premises;

(j)    failing to provide proper training to its employees regarding proper safety techniques;

(k)    failing to make reasonable inspection to determine the extent of the dangerous and hazardous conditions existing in the furnace;

(l)    failing to regularly inspect the electric arc furnace area for the presence of dangerous conditions;

(m)    disregarding the safety of persons such as plaintiffs, who were lawfully present upon the aforesaid premises as invitees;

(n)    failing to act reasonably under all the circumstances;

(o)    failing to employ adequate safety measures to ensure injured persons received prompt emergency medical attention; and

(p)    failing to exercise adequate control;

(q)    failing to remedy dangerous conditions of the furnace;

(r)    failing to recognize and repair leaks;

(s)    failing to halt production until the furnace was deemed safe;

(t)    removing safety devices or other monitoring devices;

(u)    failing to improve preventative maintenance tracking to include shell panels, roof and furnace elbow;

(v)    failing to field test component parts;

18

(w) failing to implement pre-installation check list and/or long term testing for component parts;

(x) failing to use lime injectors, automatic electrode adds, mechanical test sampler, mechanical lance, and/or robotic gunning machines;

(y) failing to reengineer/redesign panel supports and connection points of the furnace shell;

(z) failing to ensure proper ladle and floor cranes were in use;

(aa) failing to have appropriate monitors and alarms, including, but not limited to, high pulse alarms, video cameras, and other systems to monitor, inter alia, roof and elbow delta flow;

(bb) failing to ensure automatic shut-off values for, inter alia, roof, elbow and shell main values;

(cc) failing to ensure water flow was properly monitored;

(dd) failing to ensure pressure was properly monitored;

(ee) failing to ensure proper operating, fall protection, and/or safety procedures were in place;

(ff) failing to ensure water leaks and/or electrode breakage were properly monitored and detected;

(gg) failing to ensure the appropriate components were incorporated into the furnace to prevent damage and/or water infiltration caused by electric arcing; and

(hh) failing to monitor and remedy unmelted scrap bundles;

(ii) failing to ensure proper furnace components were in place to prevent water infiltration;

(jj) failing to ensure refractory was in proper condition;

(kk) failing to ensure that automated carbon detection devices were in place;

(ll) failing to ensure that measures were in place to reduce surges in the EAF;

(mm) failing to provide shields for workers to take cover behind when a kick or explosions was about to occur or occurring;

(nn) failing to provide appropriate safety features to prevent furnace kicks;

(oo) failing to regulate the material in the melt to reduce kicks;

19

(pp)   failing to have systems in place to reduce the likelihood of furnace kicks or prevent furnace kicks.

(qq)   failing to do proper safety audits of the EAF after the May 2007 EAF explosion;

(rr)   failing to do a proper safety evaluation of the EAF during its safety audits inside the Coatesville facility to assess hazards and risk of injuries workers, such as all plaintiffs herein, would be exposed to while working with, near or around the EAF.;

(ss)   failing to abide by and implement its own satety policies, rules and procedures which were a contributing cause of the EAF exploding;

(tt)   failing to do a proper Job Safety Analysis or JSA with respect to hazards and dangerous conditions that senior operating technicians and operating technicians would be exposed to while tending the EAF;

(uu)   failing to do a proper Hazard Risk Analysis with respect to detecting unsafe and dangerous conditions that would exist when tending to the EAF, including taking the temperature and carbon readings with probe devices that exposed workers, like plaintiffs, to unnecessary risks of injuries;

(vv)   failing to make every reasonable effort to ensure that all equipment is maintained in a safe condition;

(xx)   failing to ensure that their inspection and maintenance program gave top priority to equipment critical to Employee safety and health;

(ww)   failing to take all necessary steps to eliminate risk to Employees created by fault equipment;

(yy)   failure to automate the temperature probe;

(zz)   failure to perform the proper task analysis or have task analysis procedures in place for responding to a furnace kick;

(aaa)   failure to perform the proper task analysis or have task analysis procedures in place for responding for high carbon practice;

(bbb)   violating the Collective Bargaining Agreement;

(ccc)   failure to have proper carbon measurement procedures in place;

(ddd)   failure to properly train for carbon measurements;

(eee)   failure to protect workers from kicks;

20

(fff)   failing to provide safe and healthful conditions for workers; and

(ggg)   failing to install and maintain any and all equipment reasonably necessary to protect workers from hazards.

55.    By reason of the carelessness, negligence, gross negligence and recklessness of defendant(s), plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious and permanent disabling personal injuries set forth above.

56.    By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, and punitive damages pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 2- NEGLIGENCE

## PLAINTIFFS V. SIEMENS ENERGY & AUTOMATION, INC. and SIEMENS VAI SERVICES, LLC

57.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

58.    Defendant, Siemens Energy & Automation, Inc., and Siemens VAI Services, LLC, are hereinafter collectively referred to as "Siemens".

59.    Defendant Siemens or companies they have purchased for which they have become a successor-in-interest redesigned the furnace in the 1980s and/or manufactured component parts of the subject furnace, including, but not limited to, the furnace's roof deltas and elbow.

21

60. Defendant Siemens, by and through its separate and respective agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and/or distributors, was careless, negligent and/or grossly negligent both generally and in the following specific respects:

(a) failing to design a safe EAF and/or utilize proper designs or procedures for the manufacture, assembly, sale, and distribution of the electric arc furnace roof deltas and furnace paneling;

(b) designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

(c) designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

(d) designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable or safe for its intended and represented purpose;

(e) designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all necessary safety features;

(f) designing, assembling, manufacturing, selling, supplying and distributing a product which could be designed more safely;

(g) designing, assembling, manufacturing, selling, supplying and distributing a product without appropriate safety devices;

(h) violating applicable federal, state, local and/or industry standards;

(i) f ailing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances;

(j) failing to hav e adequate warnings on the product;

(k) failing to ensure the compatibility the components to the furnace;

(l) designin g the roof deltas and furnace paneling in a dangerous way as to not protect users and bystanders near the furnace;

(m) failing to investigate, retain, and analyze prior accident information in order to warn and/or notify ultimate users of product defects and injuries;

Case ID: 15050270

(n) failing to ensure the parts did not leak or permit leakage;

(o) failing to ensure that automated carbon detection devices were in place;

(p) failing to ensure that measures were in place to reduce surges or kicks in the EAF;

(q) failing to provide shields for workers to take cover behind when a kick or explosions was about to occur or occurring;

(r) failing to provide appropriate safety features to prevent furnace kicks;

(s) failing to regulate the material in the melt to reduce kicks;

(t) failing to have systems in place to reduce the likelihood of furnace kicks or prevent furnace kicks; and

(u) negligently redesigning the EAF.

61.    By reason of the carelessness, negligence, gross negligence and recklessness of defendant, as aforesaid, plaintiffs Matt McNeal, Sean Flood, and Mark Tarloski were caused to sustain serious and permanent disabling personal injuries set forth above.

62.    By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Matt McNeal's, and Mark Tarloski's catastrophic, serious and permanent injuries.

63.    WHEREFORE, plaintiffs demand judgment in their favor and against defendant Siemens in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 3-STRICT LIABILITY

## PLAINTIFFS V. SIEMENS ENERGY & AUTOMATION, INC. and SIEMENS VAI SERVICES, LLC

64.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

Case ID: 15050270

65.     Defendant Siemens, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors is strictly liable under §402(A) of the Restatement of the Law of Torts (Second) because:

(a)     Defendant is engaged in the business of designing, manufacturing, assembling, distributing, selling and/or supplying electric arc furnace roof deltas and furnace paneling;

(b)     The electric arc furnace roof deltas and furnace paneling involved in the subject accident were marketed and placed in the general stream of commerce by the defendant;

(c)     Said electric arc furnace roof deltas and furnace paneling were expected to and did reach users without substantial change in the condition in which they were designed, manufactured, assembled, distributed and/or sold;

(d)     Said electric arc furnace roof deltas and furnace paneling were designed, manufactured, assembled, distributed and/or sold in the defective condition for the reasons set forth below.

66.     Defendant Siemens, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors are strictly liable under §402(A) of the Restatement of the Law of Torts (Second), by:

(a)     Designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

(b)     Designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to its intended and foreseeable users;

(c)     Designing, assembling, manufacturing, selling, supplying and distributing a product that was not safe for all of its intended and represented purposes;

24

(d)     Failing to have adequate warnings on the product;

(e)     Failing to provide adequate warnings to the ultimate users of the product;

(f)     Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features to protect users of said products;

(g)     Failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

(h)     Designing, assembling, manufacturing, selling, supplying and distributing a product that lacked appropriate safety devices;

(i)     failing to incorporate the safety features described in the preceding paragraphs of this Complaint.

67.     The risks of the subject product outweigh the utility of this product and the dangers associated with the product are unknowable and unacceptable to the average consumer.

68.     By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

69.     The aforementioned electric arc furnace roof deltas and furnace paneling were not equipped at the time it left defendant's possession and control with every element necessary to make it safe for its reasonably foreseeable uses and reasonable foreseeable misuses.

70.     By reason of the breach of duties pursuant to §402(A) of the Restatement of the Law of Torts (Second) of defendant Siemens by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious and permanent disabling personal injuries set forth above.

25

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Siemens in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 4—BREACH OF WARRANTY

### PLAINTIFFS V. SIEMENS ENERGY & AUTOMATION, INC. and SIEMENS VAI SERVICES, LLC

71.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

72.    In designing, manufacturing, fabricating, marketing, promoting, selling, distributing, delivering and/or supplying the electric arc furnace roof deltas and furnace paneling, defendant Siemens impliedly warranted that the roof deltas and furnace paneling were merchantable, fit and safe for their intended use and the ordinary purposes for which they were sold, and that they were free from defects.

73.    The electric arc furnace roof deltas and furnace paneling as designed and supplied were not safe for their intended use and, as a result, the defendant breached the implied warranty of merchantability.

74.    Defendant's breach of the warranty of merchantability was a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Matt McNeal's, and Mark Tarloski's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Siemens in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

26

Case ID: 15050270

## COUNT 5- NEGLIGENCE

## PLAINTIFFS V. PROCESS TECHNOLOGY INTERNATIONAL, INC.

75.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

76.    Defendant Process Technologies manufactured component parts of the subject furnace, including the furnace's burners and combustion system, a.k.a. the PTI JetBox.

77.    Defendant Process Technologies, by and through its separate and respective agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and/or distributors, was careless, negligent and/or grossly negligent both generally and in the following specific respects:

(a)    failing to design and/or utilize proper designs or procedures for the manufacture, assembly, sale, and distribution of the electric arc furnace burners and combustion system;

(b)    designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

(c)    designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

(d)    designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable or safe for its intended and represented purpose;

(e)    designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all necessary safety features;

(f)    designing, assembling, manufacturing, selling, supplying and distributing a product which could be designed more safely;

(g)    designing, assembling, manufacturing, selling, supplying and distributing a product without appropriate safety devices;

(h)    violating applicable federal, state, local and/or industry standards;

(i)    failing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances;

27

(j)     failing to have adequate warnings on the product;

(k)     failing to ensure the compatibility of its burner system to the furnace's configuration;

(l)     designing the burners and combustion system in a dangerous way as to not protect users and bystanders near the furnace;

(m)    failing to investigate, retain, and analyze prior accident information in order to warn and/or notify ultimate users of product defects and injuries;

(n)     providing a burner system that was unfit for the intended use in this furnace;

(o)     failing to ensure the burners were functioning properly in this furnace;

(p)     failing to ensure burners will properly inject oxygen;

(q)     failing to require use of panels of a different material composition, i.e., copper, in conjunction with the PTI system;

(r)     failing to design a burner system appropriate for the subject furnace;

(s)     failing to incorporate designs to ensure that automated carbon detection devices were in place;

(t)     failing to incorporate designs to ensure that measures were in place to reduce surges and/or in the EAF;

(v)     failing to provide appropriate safety features to prevent furnace kicks;

(w)    failing to provide appropriate devices to regulate the material in the melt to reduce kicks; and

(x)     failing to have systems in place to reduce the likelihood of furnace kicks or prevent furnace kicks.

78.     By reason of the carelessness, negligence, gross negligence and recklessness of defendant, as aforesaid, plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious and permanent disabling personal injuries set forth above.

Case ID: 15050270

79.     By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Process Technologies in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 6-STRICT LIABILITY

### PLAINTIFFS V. PROCESS TECHNOLOGY INTERNATIONAL, INC.

80.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

81.     Defendant Process Technologies, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors is strictly liable under §402(A) of the Restatement of the Law of Torts (Second) because:

(a)     Defendant is engaged in the business of designing, manufacturing, assembling, distributing, selling and/or supplying electric arc furnace burners and combustion system;

(b)     The electric arc furnace burners and combustion system involved in the subject accident were marketed and placed in the general stream of commerce by the defendant;

(c)     Said electric arc furnace burners and combustion system were expected to and did reach users without substantial change in the condition in which they were designed, manufactured, assembled, distributed and/or sold;

29

(d)      Said electric arc furnace burners and combustion system were designed, manufactured, assembled, distributed and/or sold in the defective condition for the reasons set forth below.

82.      Defendant Process Technologies, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors are strictly liable under §402(A) of the Restatement of the Law of Torts (Second), by:

(a)      Designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

(b)      Designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to its intended and foreseeable users;

(c)      Designing, assembling, manufacturing, selling, supplying and distributing a product that was not safe for all of its intended and represented purposes;

(d)      Failing to have adequate warnings on the product;

(e)      Failing to provide adequate warnings to the ultimate users of the product;

(f)      Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features to protect users of said products;

(g)      Failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

(h)      Designing, assembling, manufacturing, selling, supplying and distributing a product that lacked appropriate safety devices;

(i)      Failing to incorporate the design features described in the preceding paragraphs of this Complaint.

30

Case ID: 15050270

83.   The risks of the subject product outweigh the utility of this product and the dangers associated with the product are unknowable and unacceptable to the average consumer.

84.   By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

85.   The aforementioned electric arc furnace burners and combustion system were not equipped at the time it left defendant's possession and control with every element necessary to make it safe for its reasonably foreseeable uses and reasonable foreseeable misuses.

86.   By reason of the breach of duties pursuant to §402(A) of the Restatement of the Law of Torts (Second) of defendant Process Technologies by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious and permanent disabling personal injuries set forth above.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Process Technologies in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 7—BREACH OF WARRANTY

## PLAINTIFFS V. PROCESS TECHNOLOGY INTERNATIONAL, INC.

87.   Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

88.   In designing, manufacturing, fabricating, marketing, promoting, selling, distributing, delivering and/or supplying the electric arc furnace burners and combustion system, defendant Process Technologies impliedly warranted that the burners and combustion system

31

were merchantable, fit and safe for their intended use and the ordinary purposes for which they were sold, and that they were free from defects.

89.     The electric arc furnace burners and combustion system as designed and supplied were not safe for their intended use and, as a result, the defendant breached the implied warranty of merchantability.

90.     Defendant's breach of the warranty of merchantability was a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Process Technologies in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 8- NEGLIGENCE

## PLAINTIFFS V. AMERIFAB, INC.

91.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

92.     Defendant Amerifab, Inc. designed, manufactured, assembled, distributed, supplied and/or sold component parts of the subject furnace, including the damper and water-cooled panels.

93.     Defendant Amerifab designed, manufactured, assembled, distributed, supplied and/or sold a damper which failed to prevent kicks and/or the explosion that caused Plaintiffs' injuries.

94.     Defendant Amerifab, by and through its separate and respective agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and/or distributors,

32

was careless, negligent and/or grossly negligent both generally and in the following specific respects:

(a)    failing to design and/or utilize proper designs or procedures for the manufacture, assembly, sale, and distribution of the electric arc furnace damper;

(b)    designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

(c)    designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

(d)    designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable or safe for its intended and represented purpose;

(e)    designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all necessary safety features;

(f)    designing, assembling, manufacturing, selling, supplying and distributing a product which could be designed more safely;

(g)    designing, assembling, manufacturing, selling, supplying and distributing a product without appropriate safety devices;

(h)    violating applicable federal, state, local and/or industry standards;

(i)    failing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances;

(j)    failing to have adequate warnings on the product;

(k)    failing to recall, retrofit and/or recommend replacement of a damper that would function better and reduce the risks of furnace kicks or impact of those kicks;

(l)    designing the water panels in a dangerous way as to not protect users and bystanders near the furnace;

(m)    failing to investigate, retain, and analyze prior accident information in order to warn and/or notify ultimate users of product defects and injuries;

(n)    failing to design the damper to protect from the damage associated with an electric arc kick;

33

(o)   Failing to design a damper to function properly to reduce kicks;

(p)   failing to supply a damper that was equipped with all safety elements necessary for its intended use;

(q)   failing to incorporate safety features to reduce the risks of furnace kicks and explosions;

(r)   designing a damper that increased the risk of furnace kicks and explosions and the impact of those kicks and explosions.

95.   By reason of the carelessness, negligence, gross negligence and recklessness of defendant, as aforesaid, plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious and permanent disabling personal injuries set forth above.

96.   By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Matt McNeal's, and Mark Tarloski's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Amerifab in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 9-STRICT LIABILITY

## PLAINTIFFS V. AMERIFAB, INC.

97.   Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

98.   Defendant Amerifab, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors is strictly liable under §402(A) of the Restatement of the Law of Torts (Second) because:

34

(a)   Defendant is engaged in the business of designing, manufacturing, assembling, distributing, selling and/or supplying electric arc furnace dampers;

(b)   The electric arc furnace dampers involved in the subject accident were marketed and placed in the general stream of commerce by the defendant;

(c)   Said electric arc furnace damper was expected to and did reach users without substantial change in the condition in which they were designed, manufactured, assembled, distributed and/or sold;

(d)   Said electric arc furnace damper was designed, manufactured, assembled, distributed and/or sold in the defective condition for the reasons set forth below.

99.   Defendant Amerifab, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors are strictly liable under §402(A) of the Restatement of the Law of Torts (Second), by:

(a)   Designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

(b)   Designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to its intended and foreseeable users;

(c)   Designing, assembling, manufacturing, selling, supplying and distributing a product that was not safe for all of its intended and represented purposes;

(d)   Failing to have adequate warnings on the product;

(e)   Failing to provide adequate warnings to the ultimate users of the product;

(f)   Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features to protect users of said products;

35

Case ID: 15050270

(g)     Failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

(h)     Designing, assembling, manufacturing, selling, supplying and distributing a product that lacked appropriate safety devices;

(i)     Failing to incorporate the safety devices described in the preceding paragraphs of this Complaint.

100.     The risks of the subject product outweigh the utility of this product and the dangers associated with the product are unknowable and unacceptable to the average consumer.

101.     By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

102.     The electric arc furnace damper was not equipped at the time it left defendant's possession and control with every element necessary to make it safe for its reasonably foreseeable uses and reasonable foreseeable misuses.

103.     By reason of the breach of duties pursuant to §402(A) of the Restatement of the Law of Torts (Second) of defendant Amerifab by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious and permanent disabling personal injuries set forth above.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Amerifab in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

36

## COUNT 10—BREACH OF WARRANTY

## PLAINTIFFS V. AMERIFAB, INC.

104.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

105.    In designing, manufacturing, fabricating, marketing, promoting, selling, distributing, delivering and/or supplying the electric arc furnace damper, defendant Amerifab impliedly warranted that the damper was merchantable, fit and safe for its intended use and the ordinary purposes for which it was sold, and that it was free from defects.

106.    The electric arc furnace damper as designed and supplied was not safe for its intended use and, as a result, the defendant breached the implied warranty of merchantability.

107.    Defendant's breach of the warranty of merchantability was a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Amerifab in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 11—NEGLIGENCE

## PLAINTIFFS V. FRANK W. HAKE, INC.

108.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

109.    At all relevant times, defendant, Frank W. Hake, was responsible for the maintenance repair of the arc furnace involved in the plaintiffs' accident.

Case ID: 15050270

110.   Defendant had a duty to act reasonably in the, maintenance and/or repair of the furnace involved in the plaintiffs' accident.

111.   Defendant breached its duty, by and through its agents, servants, workers and/or employees and was careless, negligent, grossly negligent and/or reckless as follows:

(b)   failing to adequately maintain the furnace;

(c)   failing to adequately repair the furnace;

(d)   failing to warn plaintiffs of the unreasonable hazards and unseen dangerous conditions of the furnace despite defendants' knowledge of such unreasonable hazards;

(e)   failing to employ and select only qualified and competent individuals to repair the furnace;

(f)   failing to provide proper training to its employees regarding proper safety techniques for maintaining and repairing furnaces;

(g)   failing to uncover dangerous conditions of the furnace despite routine inspections of the same;

(h)   failing to provide plaintiffs' employer with adequate instructions on the inspection, maintenance and repair of the furnace; and

(i)   failing to recognize a lack of safety elements;

(j)   failing to recommend safety devices;

(k)   failing to warn of potential hazards;

(l)   failing to ensure proper safety precautions/elements were in place to prevent explosions.

112.   By reason of the carelessness, negligence, gross negligence and recklessness of defendant, as aforesaid, plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious and permanent disabling personal injuries set forth above.

38

113.    By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Frank W. Hake in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 12 – NEGLIGENCE

## PLAINTIFFS v. ABB, INC.

114.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

115.    Defendant ABB, Inc. ("ABB") designed, manufactured, assembled, distributed, supplied and/or sold component parts of the subject furnace, including transformer for the subject EAF.

116.    Defendant ABB designed, manufactured, assembled, distributed, supplied and/or sold a transformer which failed to prevent electrical surges into the subject EAF and/or the explosion that caused Plaintiffs' injuries.

117.    Defendant ABB, by and through its separate and respective agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and/or distributors, was careless, negligent and/or grossly negligent both generally and in the following specific respects:

39

(a)    failing to design and/or utilize proper designs or procedures for the manufacture, assembly, sale, and distribution of the electric arc furnace transformer;

(b)    designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

(c)    designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

(d)    designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable or safe for its intended and represented purpose;

(e)    designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all necessary safety features;

(f)    designing, assembling, manufacturing, selling, supplying and distributing a product which could be designed more safely;

(g)    designing, assembling, manufacturing, selling, supplying and distributing a product without appropriate safety devices;

(h)    violating applicable federal, state, local and/or industry standards;

(i)    failing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances;

(j)    failing to have adequate warnings on the product;

(k)    failing to recall, retrofit and/or recommend replacement of a controller that would function better and reduce the risks of furnace kicks or impact of those kicks;

(l)    failing to investigate, retain, and analyze prior accident information in order to warn and/or notify ultimate users of product defects and injuries;

(m)    failing to design the transformer to prevent electrical surges into an EAF;

(o)    Failing to design a transformer to function properly to reduce and/or prevent electrical surges;

(p)    failing to supply a transformer that was equipped with all safety elements necessary for its intended use;

40

Case ID: 15050270

(q)   failing to incorporate safety features to reduce the risks of electrical surges, furnace kicks and explosions;

(r)   designing a transformer that increased the risk of electrical surges, furnace kicks and explosions and the impact of those kicks and explosions; and

(s)   failing to manufacture a transformer that would not produce electric surges into the EAF.

118.   By reason of the carelessness, negligence, gross negligence and recklessness of defendant, as aforesaid, plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious and permanent disabling personal injuries set forth above.

119.   By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Matt McNeal's, and Mark Tarloski's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant ABB in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 13-STRICT LIABILITY

## PLAINTIFFS V. ABB, INC.

120.   Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

121.   Defendant ABB, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors is strictly liable under §402(A) of the Restatement of the Law of Torts (Second) because:

(a)   Defendant is engaged in the business of designing, manufacturing, assembling, distributing, selling and/or supplying electric arc furnace transformers;

41

Case ID: 15050270

(b)    The electric arc furnace transformers involved in the subject accident were marketed and placed in the general stream of commerce by the defendant;

(c)    Said electric arc furnace transformers was expected to and did reach users without substantial change in the condition in which they were designed, manufactured, assembled, distributed and/or sold;

(d)    Said electric arc furnace transformers was designed, manufactured, assembled, distributed and/or sold in the defective condition for the reasons set forth below.

122.    Defendant ABB, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors are strictly liable under §402(A) of the Restatement of the Law of Torts (Second), by:

(a)    Designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

(b)    Designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to its intended and foreseeable users;

(c)    Designing, assembling, manufacturing, selling, supplying and distributing a product that was not safe for all of its intended and represented purposes;

(d)    Failing to have adequate warnings on the product;

(e)    Failing to provide adequate warnings to the ultimate users of the product;

(f)    Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features to protect users of said products;

(g)    Failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

42

(h)     Designing, assembling, manufacturing, selling, supplying and distributing a product that lacked appropriate safety devices;

(i)     Failing to incorporate the safety devices described in the preceding paragraphs of this Complaint.

123.   The risks of the subject product outweigh the utility of this product and the dangers associated with the product are unknowable and unacceptable to the average consumer.

124.   By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

125.   The electric arc furnace transformer was not equipped at the time it left defendant's possession and control with every element necessary to make it safe for its reasonably foreseeable uses and reasonable foreseeable misuses.

126.   By reason of the breach of duties pursuant to §402(A) of the Restatement of the Law of Torts (Second) of defendant ABB by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious and permanent disabling personal injuries set forth above.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant ABB in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 14—BREACH OF WARRANTY

## PLAINTIFFS V. ABB, INC.

127.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

128.    In designing, manufacturing, fabricating, marketing, promoting, selling, distributing, delivering and/or supplying the electric arc furnace transformer, defendant ABB impliedly warranted that the damper was merchantable, fit and safe for its intended use and the ordinary purposes for which it was sold, and that it was free from defects.

129.    The electric arc furnace transformer as designed and supplied was not safe for its intended use and, as a result, the defendant breached the implied warranty of merchantability.

130.    Defendant's breach of the warranty of merchantability was a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Amerifab in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 15- NEGLIGENCE

## PLAINTIFFS V. S.D. MYERS INC.

131.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

132.    At all relevant times, defendant S.D. Myers Inc., was responsible for the maintenance and/or repair of the transformer involved in the plaintiffs' accident.

44

Case ID: 15050270

133.    Defendant S.D. Myers Inc. had a duty to act reasonably in the maintenance and/or repair of the transformer involved in the plaintiffs' accident.

134.    Defendant S.D. Myers Inc. breached its duty, by and through its agents, servants, workers and/or employees and was careless, negligent, grossly negligent and/or reckless as follows:

    (a)    failing to maintain the transformer free from unreasonable hazards and unforeseen dangerous conditions;

    (b)    failing to properly inspect the transformer for the presence of hazards and dangerous conditions;

    (c)    failing to adequately maintain the transformer;

    (d)    failing to inspect and maintain the transformer on the premises;

    (e)    failing to maintain the transformer in a safe manner;

    (f)    failing to maintain the transformer in accordance with industry standards;

    (g)    failing to warn of the safety hazards and unseen dangerous conditions then and there existing on the premises despite defendant's knowledge of such hazards;

    (h)    failing to employ and select only qualified and competent individuals to inspect the transformer for hazardous conditions;

    (i)    allowing a dangerous and hazardous condition to exist which defendant knew or should have known would cause injury and/or death to others, such as plaintiffs, as business invitees on the premises;

    (j)    failing to provide proper training to its employees regarding proper safety techniques for repairing and/or maintaining transformers;

    (k)    failing to make reasonable inspection to determine the extent of the dangerous and hazardous conditions existing with the transformer;

    (l)    failing to regularly inspect the transformer for the presence of dangerous conditions;

    (m)    disregarding the safety of persons such as plaintiffs, who were lawfully present upon the aforesaid premises as invitees;

45

Case ID: 15050270

(n) failing to act reasonably under all the circumstances;

(o) failing to employ adequate safety measures to ensure injured persons received prompt emergency medical attention; and

(p) failing to exercise adequate control;

(q) failing to remedy dangerous conditions with the transformer;

(r) failing to recognize and repair defects with the transformer;

(s) failing to halt service until the transformer was deemed safe;

(t) removing safety devices or other monitoring devices;

(u) failing to field test component parts of the transformer;

(v) failing to implement pre-installation check list and/or long term testing for component parts of the transformer;

(w) failing to adequately maintain the transformer;

(x) failing to adequately repair the transformer;

(y) failing to warn plaintiffs of the unreasonable hazards and unseen dangerous conditions of the transformer despite defendant's knowledge of such unreasonable hazards;

(z) failing to uncover dangerous conditions in the transformer despite routine inspections of the same;

(aa) failing to provide plaintiffs' employer with adequate instructions on the inspection, maintenance and repair of the transformer;

(bb) failing to recognize a lack of safety elements;

(cc) failing to recommend safety devices;

(dd) failing to warn of potential hazards;

(ee) failing to ensure proper safety precautions/elements were in place to prevent explosions; and

(ff) causing or failing to prevent electrical surges into the EAF.

46

Case ID: 15050270

135.    By reason of the carelessness, negligence, gross negligence and recklessness of defendant, plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious and permanent disabling personal injuries set forth above.

136.    By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant S.D. Myers Inc. in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 16- NEGLIGENCE

## PLAINTIFFS V. ENERG TEST, LLC

137.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

138.    At all relevant times, defendant, Energ Test, LLC, was responsible for the installation, maintenance and/or repair of the transformer involved in the plaintiffs' accident.

139.    Defendant Energ Test had a duty to act reasonably in the installation, maintenance and/or repair of the transformer involved in the plaintiffs' accident.

140.    Defendant Energ Test breached its duty, by and through its agents, servants, workers and/or employees and was careless, negligent, grossly negligent and/or reckless as follows:

47

(a)    failing to maintain the transformer free from unreasonable hazards and unforeseen dangerous conditions;

(b)    failing to properly inspect the transformer area for the presence of hazards and dangerous conditions;

(c)    failing to adequately maintain the transformer;

(d)    failing to inspect and maintain the transformer on the premises;

(e)    failing to maintain the transformer in a safe manner;

(f)    failing to maintain the transformer in accordance with industry standards;

(g)    failing to warn of the safety hazards and unseen dangerous conditions then and there existing on the premises despite defendant's knowledge of such hazards;

(h)    failing to employ and select only qualified and competent individuals to inspect the transformer for hazardous conditions;

(i)    allowing a dangerous and hazardous condition to exist which defendant knew or should have known would cause injury and/or death to others, such as plaintiffs, as business invitees on the premises;

(j)    failing to provide proper training to its employees regarding proper safety techniques for repairing and/or maintaining transformers;

(k)    failing to make reasonable inspection to determine the extent of the dangerous and hazardous conditions existing with the transformer;

(l)    failing to regularly inspect the transformer for the presence of dangerous conditions;

(m)    disregarding the safety of persons such as plaintiffs, who were lawfully present upon the aforesaid premises as invitees;

(n)    failing to act reasonably under all the circumstances;

(o)    failing to employ adequate safety measures to ensure injured persons received prompt emergency medical attention; and

(p)    failing to exercise adequate control;

(q)    failing to remedy dangerous conditions with the transformer;

(r)    failing to recognize and repair defects with the transformer;

(s)    failing to halt service until the transformer was deemed safe;

(t)     removing safety devices or other monitoring devices;

(u)     failing to field test component parts of the transformer;

(v)     failing to implement pre-installation check list and/or long term testing for
component parts of the transformer;

(w)     failing to adequately maintain the transformer;

(x)     failing to adequately repair the transformer;

(y)     failing to warn plaintiffs of the unreasonable hazards and unseen
dangerous conditions of the transformer despite defendant's knowledge
of such unreasonable hazards;

(z)     failing to uncover dangerous conditions of the transformer despite
routine inspections of the same;

(aa)    failing to provide plaintiffs' employer with adequate instructions on the
inspection, maintenance and repair of the transformer;

(bb)    failing to recognize a lack of safety elements;

(cc)    failing to recommend safety devices;

(dd)    failing to warn of potential hazards;

(ee)    failing to ensure proper safety precautions/elements were in place to
prevent explosions;

(ff)    failing to adequately install the transformer;

(gg)    failing to install the transformer in a safe manner;

(hh)    failing to install the transformer in accordance with industry standards;
and

(ii)    causing or failing to prevent electrical surges into the EAF.

141.    By reason of the carelessness, negligence, gross negligence and recklessness of
defendant, plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious
and permanent disabling personal injuries set forth above.

Case ID: 15050270

142.    By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Energ Test, LLC, in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 17-STRICT LIABILITY

## PLAINTIFFS V. GENERAL ELECTRIC CO. and AMIGE LLC d/b/a AMI GE – USA

143.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

144.    Defendants, General Electric Company and AMIGE, LLC d/b/a AMI GE – USA (hereinafter "GE"), manufactured the subject defective breaker and by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors is strictly liable under §402(A) of the Restatement of the Law of Torts (Second) because:

(a)    Defendant is engaged in the business of designing, manufacturing, assembling, distributing, selling and/or supplying electrical breakers;

(b)    The electrical breaker(s) involved in the subject accident was/were marketed and placed in the general stream of commerce by the defendant;

(c)    Said breaker(s) was/were expected to and did reach users without substantial change in the condition in which they were designed, manufactured, assembled, distributed and/or sold;

50

(d)    Said breaker(s) was/were designed, manufactured, assembled, distributed and/or sold in the defective condition for the reasons set forth below.

145.    Defendant GE, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors are strictly liable under §402(A) of the Restatement of the Law of Torts (Second), by:

> (a)    Designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;
>
> (b)    Designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to its intended and foreseeable users;
>
> (c)    Designing, assembling, manufacturing, selling, supplying and distributing a product that was not safe for all of its intended and represented purposes;
>
> (d)    Failing to have adequate warnings on the product;
>
> (e)    Failing to provide adequate warnings to the ultimate users of the product;
>
> (f)    Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features to protect users of said products;
>
> (g)    Failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring; and
>
> (h)    Designing, assembling, manufacturing, selling, supplying and distributing a product that lacked appropriate safety devices.

146.    The risks of the subject product outweigh the utility of this product and the dangers associated with the product are unknowable and unacceptable to the average consumer.

147.    By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

148.    The breaker(s) was/were not equipped at the time it left defendant's possession and control with every element necessary to make it safe for its reasonably foreseeable uses and reasonable foreseeable misuses.

149.    By reason of the breach of duties pursuant to §402(A) of the <u>Restatement of the Law of Torts (Second)</u> of defendant GE by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious and permanent disabling personal injuries set forth above.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant GE in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 18 – NEGLIGENCE

## PLAINTIFFS V. GENERAL ELECTRIC CO. v. and AMIGE LLC d/b/a AMI GE – USA

150.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

151.    At all relevant times, defendant, GE, was responsible for the manufacturing and design of the defective breaker.

152.    Defendant GE had a duty to act reasonably in the manufacturing and design of the breaker.

153.    Defendant GE breached its duty, by and through its agents, servants, workers and/or employees and was careless, negligent, grossly negligent and/or reckless as follows:

52

(a)    Designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

(b)    Designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to its intended and foreseeable users;

(c)    Designing, assembling, manufacturing, selling, supplying and distributing a product that was not safe for all of its intended and represented purposes;

(d)    Failing to have adequate warnings on the product;

(e)    Failing to provide adequate warnings to the ultimate users of the product;

(f)    Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features to protect users of said products;

(g)    Failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring; and

(h)    Designing, assembling, manufacturing, selling, supplying and distributing a product that lacked appropriate safety devices.

154.    By reason of the carelessness, negligence, gross negligence and recklessness of defendant, plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious and permanent disabling personal injuries set forth above.

155.    By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant GE, in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

Case ID: 15050270

## COUNT 19 – BREACH OF WARRANTY

## PLAINTIFFS V. GENERAL ELECTRIC CO. and AMIGE LLC d/b/a AMI GE – USA

156.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

157.    In designing, manufacturing, fabricating, marketing, promoting, selling, distributing, delivering and/or supplying the components discussed above, GEs impliedly warranted that the breakers were merchantable, fit and safe for their intended use and the ordinary purposes for which they were sold, and that they were free from defects.

158.    The breaker as designed and supplied was not safe for their intended use and, as a result, the defendant breached the implied warranty of merchantability.

159.    Defendant's breach of the warranty of merchantability was a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Matt McNeal's, and Mark Tarloski's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant GE in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 20-STRICT LIABILITY

## PLAINTIFFS V. WESTINGHOUSE ELECTRIC COMPANY, LLC and WESTINGHOUSE ELECTRIC CORP.

160.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

161.    Defendants Westinghouse Electric Company, LLC and Westinghouse Electric Corp. (hereinafter referred to, collectively, as "Westinghouse"), manufactured the defective electrical analog meters and by and through its agents, servants, workers, contractors, designers,

54

assemblers, manufacturers, sellers, suppliers and distributors is strictly liable under §402(A) of the Restatement of the Law of Torts (Second) because:

(a)    Defendant is engaged in the business of designing, manufacturing, assembling, distributing, selling and/or supplying electrical analog meters;

(b)    The electrical analog meter(s) involved in the subject accident was/were marketed and placed in the general stream of commerce by the defendant;

(c)    Said electrical analog meter(s) was/were expected to and did reach users without substantial change in the condition in which they were designed, manufactured, assembled, distributed and/or sold;

(d)    Said electrical analog meter(s) was/were designed, manufactured, assembled, distributed and/or sold in the defective condition for the reasons set forth below;

(e)    The electrical analog meter(s) in the control room of The Coatesville Plant was/were marketed and placed in the general stream of commerce by the defendant.

162.    Defendant Westinghouse, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors are strictly liable under §402(A) of the Restatement of the Law of Torts (Second), by:

(a)    Designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

(b)    Designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to its intended and foreseeable users;

(c)    Designing, assembling, manufacturing, selling, supplying and distributing a product that was not safe for all of its intended and represented purposes;

(d)    Failing to have adequate warnings on the product;

(e)    Failing to provide adequate warnings to the ultimate users of the product;

55

(f)     Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features to protect users of said products;

(g)     Failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring; and

(h)     Designing, assembling, manufacturing, selling, supplying and distributing a product that lacked appropriate safety devices.

163.    The risks of the subject product outweigh the utility of this product and the dangers associated with the product are unknowable and unacceptable to the average consumer.

164.    By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

165.    The electrical analog meter(s) were not equipped at the time it left defendant's possession and control with every element necessary to make it safe for its reasonably foreseeable uses and reasonable foreseeable misuses.

166.    By reason of the breach of duties pursuant to §402(A) of the Restatement of the Law of Torts (Second) of defendant Westinghouse by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious and permanent disabling personal injuries set forth above.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants Westinghouse Electric Company, LLC and Westinghouse Electric Corp. in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

56

## COUNT 21 – NEGLIGENCE

### PLAINTIFFS V. WESTINGHOUSE

167.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

168.    At all relevant times, defendant, Westinghouse, was responsible for the manufacturing and design of the defective electric analog meter.

169.    Defendant Westinghouse had a duty to act reasonably in the manufacturing and design of the defective electric analog meter

170.    Defendant Westinghouse breached its duty, by and through its agents, servants, workers and/or employees and was careless, negligent, grossly negligent and/or reckless as follows:

      (a)    Designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

      (b)    Designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to its intended and foreseeable users;

      (c)    Designing, assembling, manufacturing, selling, supplying and distributing a product that was not safe for all of its intended and represented purposes;

      (d)    Failing to have adequate warnings on the product;

      (e)    Failing to provide adequate warnings to the ultimate users of the product;

      (f)    Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features to protect users of said products;

      (g)    Failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring; and

57

Case ID: 15050270

     (h)    Designing, assembling, manufacturing, selling, supplying and distributing a product that lacked appropriate safety devices.

171.    By reason of the carelessness, negligence, gross negligence and recklessness of defendant, plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious and permanent disabling personal injuries set forth above.

172.    By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Westinghouse, in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 22 – BREACH OF WARRANTY

### PLAINTIFFS V. WESTINGHOUSE

173.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

174.    In designing, manufacturing, fabricating, marketing, promoting, selling, distributing, delivering and/or supplying the components discussed above, Westinghouse impliedly warranted that the electric analog meters were merchantable, fit and safe for their intended use and the ordinary purposes for which they were sold, and that they were free from defects.

58

175.    The breaker as designed and supplied was not safe for their intended use and, as a result, the defendant breached the implied warranty of merchantability.

176.    Defendant's breach of the warranty of merchantability was a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Matt McNeal's, and Mark Tarloski's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Westinghouse in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 23 – STRICT LIABILITY

## PLAINTIFFS V. TENOVA DEFENDANTS

177.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

178.    Defendant Tenova, manufactured the gas analyzing systems that impacted or regulated carbon levels or other gas levels and by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors is strictly liable under §402(A) of the Restatement of the Law of Torts (Second) because:

(a)    Defendant is engaged in the business of designing, manufacturing, assembling, distributing, selling and/or supplying these systems;

(b)    The systems involved in the subject accident was/were marketed and placed in the general stream of commerce by the defendant;

59

(c)     Said systems was/were expected to and did reach users without substantial change in the condition in which they were designed, manufactured, assembled, distributed and/or sold;

(d)     Said systems was/were designed, manufactured, assembled, distributed and/or sold in the defective condition for the reasons set forth below.

179.    Defendant Tenova, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors are strictly liable under §402(A) of the Restatement of the Law of Torts (Second), by:

      (a)     Designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

      (b)     Designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to its intended and foreseeable users;

      (c)     Designing, assembling, manufacturing, selling, supplying and distributing a product that was not safe for all of its intended and represented purposes;

      (d)     Failing to have adequate warnings on the product;

      (e)     Failing to provide adequate warnings to the ultimate users of the product;

      (f)     Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features to protect users of said products;

      (g)     Failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring; and

      (h)     Designing, assembling, manufacturing, selling, supplying and distributing a product that lacked appropriate safety devices.

180.    The risks of the subject product outweigh the utility of this product and the dangers associated with the product are unknowable and unacceptable to the average consumer.

181.    By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

182.    The systems was/were not equipped at the time it left defendant's possession and control with every element necessary to make it safe for its reasonably foreseeable uses and reasonable foreseeable misuses.

183.    By reason of the breach of duties pursuant to §402(A) of the Restatement of the Law of Torts (Second) of defendant Tenova by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious and permanent disabling personal injuries set forth above.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Tenova in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 24 – NEGLIGENCE

## PLAINTIFFS V. TENOVA DEFENDANTS

184.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

185.    At all relevant times, defendant, Tenova, was responsible for the manufacturing and design of the subject gas analyzing systems that impacted or regulated carbon levels or other gas levels.

61

Case ID: 15050270

186.    Defendant Tenova had a duty to act reasonably in the manufacturing and design of the defective systems.

187.    Defendant Tenova breached its duty, by and through its agents, servants, workers and/or employees and was careless, negligent, grossly negligent and/or reckless as follows:

(a)    Designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

(b)    Designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to its intended and foreseeable users;

(c)    Designing, assembling, manufacturing, selling, supplying and distributing a product that was not safe for all of its intended and represented purposes;

(d)    Failing to have adequate warnings on the product;

(e)    Failing to provide adequate warnings to the ultimate users of the product;

(f)    Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features to protect users of said products;

(g)    Failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring; and

(h)    Designing, assembling, manufacturing, selling, supplying and distributing a product that lacked appropriate safety devices.

188.    By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

189.    The gas analyzing system(s) was/were not equipped at the time it left defendant's possession and control with every element necessary to make it safe for its reasonably foreseeable uses and reasonable foreseeable misuses.

62

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Tenova in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 25 – BREACH OF WARRANTY

### PLAINTIFFS V. TENOVA DEFENDANTS

190.   Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

191.   In designing, manufacturing, fabricating, marketing, promoting, selling, distributing, delivering and/or supplying the components discussed above, Tenova impliedly warranted that the systems were merchantable, fit and safe for their intended use and the ordinary purposes for which they were sold, and that they were free from defects.

192.   The breaker as designed and supplied was not safe for their intended use and, as a result, the defendant breached the implied warranty of merchantability.

193.   Defendant's breach of the warranty of merchantability was a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Matt McNeal's, and Mark Tarloski's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Tenova in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

Case ID: 15050270

## COUNT 26- NEGLIGENCE

## PLAINTIFFS V. SCHNEIDER ELECTRIC USA, INC.

194.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

195.    Defendant Schneider Electric USA, Inc. ("Schneider") manufactured component parts of the subject furnace, including, but not limited to, the Programmable Logic Controller ("PLC") for the subject furnace.

196.    Defendant Schneider, by and through its separate and respective agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and/or distributors, was careless, negligent and/or grossly negligent both generally and in the following specific respects:

    (a)    failing to design and/or utilize proper designs or procedures for the manufacture, assembly, sale, and distribution of the PLCs for the subject furnace;

    (b)    designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

    (c)    designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

    (d)    designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable or safe for its intended and represented purpose;

    (e)    designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all necessary safety features;

    (f)    designing, assembling, manufacturing, selling, supplying and distributing a product which could be designed more safely;

    (g)    designing, assembling, manufacturing, selling, supplying and distributing a product without appropriate safety devices;

    (h)    violating applicable federal, state, local and/or industry standards;

    (i)    failing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances;

Case ID: 15050270

(j)     failing to have adequate warnings on the product;

(k)     failing to ensure the compatibility the components to the furnace;

(l)     designing the PLCs in a dangerous way as to not protect users and bystanders near the furnace;

(m)    failing to investigate, retain, and analyze prior accident information in order to warn and/or notify ultimate users of product defects and injuries;

(n)     failing to ensure that automated carbon detection devices were in place;

(o)     failing to ensure that measures were in place to reduce surges in the EAF;

(p)     failing to provide appropriate safety features to detect and prevent furnace kicks;

(q)     failing to design the PLC to reduce the likelihood of furnace kicks or prevent furnace kicks; and

(r)     designing and manufacturing a PLC that failed to work properly.

197.    By reason of the carelessness, negligence, gross negligence and recklessness of defendant, as aforesaid, plaintiffs Matt McNeal, Sean Flood, and Mark Tarloski were caused to sustain serious and permanent disabling personal injuries set forth above.

198.    By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Matt McNeal's, and Mark Tarloski's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Schneider in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 27-STRICT LIABILITY

## PLAINTIFFS V. SCHNEIDER ELECTRIC USA, INC.

199.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

Case ID: 15050270

200.    Defendant Schneider, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors is strictly liable under §402(A) of the Restatement of the Law of Torts (Second) because:

        (a)    Defendant is engaged in the business of designing, manufacturing, assembling, distributing, selling and/or supplying electric arc furnace PLCs;

        (b)    The electric arc furnace PLCs involved in the subject accident were marketed and placed in the general stream of commerce by the defendant;

        (c)    Said electric arc furnace PLCs were expected to and did reach users without substantial change in the condition in which they were designed, manufactured, assembled, distributed and/or sold;

        (d)    Said electric arc furnace PLCs were designed, manufactured, assembled, distributed and/or sold in the defective condition for the reasons set forth below.

201.    Defendant Schneider, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors are strictly liable under §402(A) of the Restatement of the Law of Torts (Second), by:

        (a)    Designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

        (b)    Designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to its intended and foreseeable users;

66

(c)     Designing, assembling, manufacturing, selling, supplying and distributing a product that was not safe for all of its intended and represented purposes;

(d)     Failing to have adequate warnings on the product;

(e)     Failing to provide adequate warnings to the ultimate users of the product;

(f)     Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features to protect users of said products;

(g)     Failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

(h)     Designing, assembling, manufacturing, selling, supplying and distributing a product that lacked appropriate safety devices;

(i)     failing to incorporate the safety features described in the preceding paragraphs of this Complaint.

202.    The risks of the subject product outweigh the utility of this product and the dangers associated with the product are unknowable and unacceptable to the average consumer.

203.    By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

204.    The aforementioned electric arc PLCs were not equipped at the time it left defendant's possession and control with every element necessary to make it safe for its reasonably foreseeable uses and reasonable foreseeable misuses.

205.    By reason of the breach of duties pursuant to §402(A) of the <u>Restatement of the Law of Torts (Second)</u> of defendant Schneider by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious and permanent disabling personal injuries set forth above.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Schneider in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 28—BREACH OF WARRANTY

## PLAINTIFFS V. SCHNEIDER ELECTRIC USA, INC.

206.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

207.    In designing, manufacturing, fabricating, marketing, promoting, selling, distributing, delivering and/or supplying the electric arc furnace PLCs, defendant Schneider impliedly warranted that the roof deltas and furnace paneling were merchantable, fit and safe for their intended use and the ordinary purposes for which they were sold, and that they were free from defects.

208.    The electric arc furnace PLCs as designed and supplied were not safe for their intended use and, as a result, the defendant breached the implied warranty of merchantability.

68

209.   Defendant's breach of the warranty of merchantability was a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Matt McNeal's, and Mark Tarloski's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Schneider in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 29 – NEGLIGENCE
## PLAINTIFFS v. LEEDS & NORTHRUP COMPANY, J B FURNACE ENGINEERING LTD., AND PROCESS INSTRUMENTS, INC.

210.   Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

211.   Defendants Leeds & Northrup Co., J B Engineering Ltd, and Process Instruments, Inc., manufactured, sold, supplied and/or distributed component parts of the subject furnace, including, but not limited to, the temperature and carbon recording units and other components used to analyze the temperature and carbon content of the subject furnace.

212.   Defendant Leeds & Northrup Co., J B Engineering Ltd, and Process Instruments, Inc., by and through its separate and respective agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and/or distributors, was careless, negligent and/or grossly negligent both generally and in the following specific respects:

      a.   failing to properly design and/or utilize proper designs or procedures for the manufacture, assembly, sale, and distribution of the temperature and carbon

Case ID: 15050270

recording units and other components used to analyze the temperature and carbon content of the subject furnace;

b.  designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

c.  designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

d.  designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable or safe for its intended and represented purpose;

e.  designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all necessary safety features;

f.  designing, assembling, manufacturing, selling, supplying and distributing a product which could be designed more safely;

g.  designing, assembling, manufacturing, selling, supplying and distributing a product without appropriate safety devices;

h.  violating applicable federal, state, local and/or industry standards;

i.  failing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances;

j.  failing to have adequate warnings on the product;

k.  failing to ensure the compatibility the components to the furnace;

l.  designing the temperature and carbon recording units and other components used to analyze the temperature and carbon content of the subject furnace in a dangerous way as to not protect users and bystanders near the furnace;

70

Case ID: 15050270

m. failing to investigate, retain, and analyze prior accident information in order to warn and/or notify ultimate users of product defects and injuries;

n. failing to make the product automated;

o. designing a product that failed to work properly; and

p. failing to design a safer product for EAF operator use.

213.    By reason of the carelessness, negligence, gross negligence and recklessness of defendant, as aforesaid, plaintiffs Matt McNeal, Sean Flood, and Mark Tarloski were caused to sustain serious and permanent disabling personal injuries set forth above.

214.    By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Matt McNeal's, and Mark Tarloski's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Leeds & Northrup Co., J B Engineering Ltd, and Process Instruments, Inc., in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 30-STRICT LIABILITY

## PLAINTIFFS V. LEEDS & NORTHRUP COMPANY, J B FURNACE ENGINEERING LTD., AND PROCESS INSTRUMENTS, INC.

215.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

216.    Defendants Leeds & Northrup Co., J B Engineering Ltd, and Process Instruments, Inc., by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors are strictly liable under §402(A) of the Restatement of the Law of Torts (Second) because:

71

(a)     Defendant is engaged in the business of designing, manufacturing, assembling, distributing, selling and/or supplying temperature and carbon recording units and other components used to analyze the temperature and carbon content of electric arc furnaces;

(b)     The temperature and carbon recording units and other components used to analyze the temperature and carbon content of electric arc furnace involved in the subject accident were marketed and placed in the general stream of commerce by the defendant;

(c)     Said temperature and carbon recording units and other components used to analyze the temperature and carbon content of electric arc furnaces were expected to and did reach users without substantial change in the condition in which they were designed, manufactured, assembled, distributed and/or sold;

(d)     Said temperature and carbon recording units and other components used to analyze the temperature and carbon content of electric arc furnaces were designed, manufactured, assembled, distributed and/or sold in the defective condition for the reasons set forth below.

217.    Defendant Leeds & Northrup Company, J B Furnace Engineering Ltd, and Process Instruments, Inc., by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors are strictly liable under §402(A) of the Restatement of the Law of Torts (Second), by:

(a)     Designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

72

(b)   Designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to its intended and foreseeable users;

(c)   Designing, assembling, manufacturing, selling, supplying and distributing a product that was not safe for all of its intended and represented purposes;

(d)   Failing to have adequate warnings on the product;

(e)   Failing to provide adequate warnings to the ultimate users of the product;

(f)   Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features to protect users of said products;

(g)   Failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

(h)   Designing, assembling, manufacturing, selling, supplying and distributing a product that lacked appropriate safety devices;

(i)   failing to incorporate the safety features described in the preceding paragraphs of this Complaint.

218.   The risks of the subject product outweigh the utility of this product and the dangers associated with the product are unknowable and unacceptable to the average consumer.

73

219.   By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

220.   The aforementioned temperature and carbon recording units and other components used to analyze the temperature and carbon content of electric arc furnaces were not equipped at the time it left defendant's possession and control with every element necessary to make it safe for its reasonably foreseeable uses and reasonable foreseeable misuses.

221.   By reason of the breach of duties pursuant to §402(A) of the Restatement of the Law of Torts (Second) of defendants, Leeds & Northrup Company, J B Furnace Engineering Ltd, and Process Instruments, Inc., by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious and permanent disabling personal injuries set forth above.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants Leeds & Northrup Company, J B Furnace Engineering Ltd, and Process Instruments, Inc., in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 31—BREACH OF WARRANTY

### PLAINTIFFS V. LEEDS & NORTHRUP COMPANY, J B FURNACE ENGINEERING LTD., AND PROCESS INSTRUMENTS, INC.

222.   Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

223.   In designing, manufacturing, fabricating, marketing, promoting, selling, distributing, delivering and/or supplying the temperature and carbon recording units and other components used to analyze the temperature and carbon content of electric arc furnaces,

74

defendants Leeds & Northrup Company, J B Furnace Engineering Ltd, and Process Instruments, Inc., impliedly warranted that the roof deltas and furnace paneling were merchantable, fit and safe for their intended use and the ordinary purposes for which they were sold, and that they were free from defects.

224.    The temperature and carbon recording units and other components used to analyze the temperature and carbon content of electric arc furnaces as designed and supplied were not safe for their intended use and, as a result, the defendant breached the implied warranty of merchantability.

225.    Defendant's breach of the warranty of merchantability was a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Matt McNeal's, and Mark Tarloski's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendants, Leeds & Northrup Company, J B Furnace Engineering Ltd, and Process Instruments, Inc., in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 32-NEGLIGENCE

## PLAINTIFFS v. HERAEUS ELECTRO-NITE CO. and HERAEUS ELECTRO-NITE CO., LLC

226.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

227.    Defendants, Haraeus Electro-Nite Co. and Haraeus Electro-Nite Co., LLC. (collectively, "Haraeus") manufactured component parts of the subject furnace, including, but not limited to, the sleeve and consumable thermocouple of the subject furnace.

Case ID: 15050270

228.    Defendant Haraeus, by and through its separate and respective agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and/or distributors, was careless, negligent and/or grossly negligent both generally and in the following specific respects:

q.  failing to design and/or utilize proper designs or procedures for the manufacture, assembly, sale, and distribution of the sleeve and consumable thermocouple for the subject furnace;

r.  designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

s.  designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous;

t.  designing, assembling, manufacturing, selling, supplying and distributing a product which was not reasonably fit, suitable or safe for its intended and represented purpose;

u.  designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all necessary safety features;

v.  designing, assembling, manufacturing, selling, supplying and distributing a product which could be designed more safely;

w.  designing, assembling, manufacturing, selling, supplying and distributing a product without appropriate safety devices;

x.  violating applicable federal, state, local and/or industry standards;

y.  failing to adequately and properly test said product after its design and/or assembly under reasonably foreseeable circumstances;

76

z.  failing to have adequate warnings on the product;

aa. failing to ensure the compatibility the components to the furnace;

bb. designing the sleeve and consumable thermocouple in a dangerous way as to not

protect users and bystanders near the furnace;

cc. failing to investigate, retain, and analyze prior accident information in order to

warn and/or notify ultimate users of product defects and injuries;

dd. failing to ensure the parts did not leak or permit leakage;

ee. failure to make the product automated;

ff.  designing a product that failed to work properly; and

gg. failing to design product properly.

229.   By reason of the carelessness, negligence, gross negligence and recklessness of defendant, as aforesaid, plaintiffs Matt McNeal, Sean Flood, and Mark Tarloski were caused to sustain serious and permanent disabling personal injuries set forth above.

230.   By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Matt McNeal's, and Mark Tarloski's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Haraeus in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 33-STRICT LIABILITY

## PLAINTIFFS V. HERAEUS ELECTRO-NITE CO. and HERAEUS ELECTRO-NITE CO., LLC

231.   Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

232.     Defendant Schneider, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors is strictly liable under §402(A) of the Restatement of the Law of Torts (Second) because:

(a)     Defendant is engaged in the business of designing, manufacturing, assembling, distributing, selling and/or supplying electric arc furnace sleeve and consumable thermocouples;

(b)     The electric arc furnace sleeves and consumable thermocouples involved in the subject accident were marketed and placed in the general stream of commerce by the defendant;

(c)     Said electric arc furnace sleeves and consumable thermocouples were expected to and did reach users without substantial change in the condition in which they were designed, manufactured, assembled, distributed and/or sold;

(d)     Said electric arc furnace sleeves and consumable thermocouples were designed, manufactured, assembled, distributed and/or sold in the defective condition for the reasons set forth below.

233.     Defendant Haraeus, by and through its agents, servants, workers, contractors, designers, assemblers, manufacturers, sellers, suppliers and distributors are strictly liable under §402(A) of the Restatement of the Law of Torts (Second), by:

(a)     Designing, assembling, manufacturing, selling, supplying and distributing a product in a defective condition;

(b)     Designing, assembling, manufacturing, selling, supplying and distributing a product that was unreasonably dangerous to its intended and foreseeable users;

(c)     Designing, assembling, manufacturing, selling, supplying and distributing a product that was not safe for all of its intended and represented purposes;

(d)     Failing to have adequate warnings on the product;

(e)     Failing to provide adequate warnings to the ultimate users of the product;

(f)     Designing, assembling, manufacturing, selling, supplying and distributing a product which lacked all the necessary safety features to protect users of said products;

(g)     Failing to either know of prior accidents and injuries with the product and/or failing to correct and prevent the same accidents and injuries from reoccurring;

(h)     Designing, assembling, manufacturing, selling, supplying and distributing a product that lacked appropriate safety devices;

(i)     failing to incorporate the safety features described in the preceding paragraphs of this Complaint.

234.    The risks of the subject product outweigh the utility of this product and the dangers associated with the product are unknowable and unacceptable to the average consumer.

235.    By conducting itself as set forth above, defendant's acts and/or omissions were a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Mark Tarloski's, and Matt McNeal's catastrophic, serious and permanent injuries.

Case ID: 15050270

236.    The aforementioned electric arc sleeves and consumable thermocouples were not equipped at the time it left defendant's possession and control with every element necessary to make it safe for its reasonably foreseeable uses and reasonable foreseeable misuses.

237.    By reason of the breach of duties pursuant to §402(A) of the Restatement of the Law of Torts (Second) of defendant Haraeus by and through its agents, servants, workmen, contractors, suppliers, distributors and/or employees as aforesaid, plaintiffs Sean Flood, Mark Tarloski, and Matt McNeal were caused to sustain serious and permanent disabling personal injuries set forth above.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Haraeus in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 34—BREACH OF WARRANTY

## PLAINTIFFS V. HERAEUS ELECTRO-NITE CO. and HERAEUS ELECTRO-NITE CO., LLC

238.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

239.    In designing, manufacturing, fabricating, marketing, promoting, selling, distributing, delivering and/or supplying the electric arc furnace sleeves and consumable thermocouples, defendant Haraeus impliedly warranted that the roof deltas and furnace paneling were merchantable, fit and safe for their intended use and the ordinary purposes for which they were sold, and that they were free from defects.

240.    The electric arc furnace sleeves and consumable thermocouples as designed and supplied were not safe for their intended use and, as a result, the defendant breached the implied warranty of merchantability.

80

241.    Defendant's breach of the warranty of merchantability was a substantial factor in, a factual cause of, and/or increased the risk of Sean Flood's, Matt McNeal's, and Mark Tarloski's catastrophic, serious and permanent injuries.

WHEREFORE, plaintiffs demand judgment in their favor and against defendant Haraeus in an amount in excess of Fifty Thousand Dollars ($50,000.00) including delay damages, pursuant to Pa. R.C.P. 238, interest and allowable costs of suit and bring this action to recover same.

## COUNT 35- LOSS OF CONSORTIUM
## CHRISTINE McNEAL v. ALL DEFENDANTS

242.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

243.    Plaintiff, Christine McNeal, is the wife of plaintiff, Matt McNeal, and as such, is entitled to his society, companionship and services.

244.    By reason of the defendants' carelessness, negligence and other liability producing conduct, the wife plaintiff, Christine McNeal, has suffered the loss of consortium and has been deprived of her husband's love, companionship, comfort, affection, society, morale guidance, intellectual strength and physical assistance.

WHEREFORE, plaintiff, Christine McNeal, claims of all defendants, jointly and/or severally, separate sums in excess of $50,000 in damages, exclusive of interest, costs, damages, pursuant to Pennsylvania Rule of Civil Procedure 238 and attorneys fees and brings this action to recover the same.

Case ID: 15050270

## COUNT 36- LOSS OF CONSORTIUM
## STEPHANIE TARLOSKI v. ALL DEFENDANTS

245.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint.

246.    Plaintiff, Stephanie Tarloski, is the wife of plaintiff, Mark Tarloski, and as such, is entitled to his society, companionship and services.

247.    By reason of the defendants' carelessness, negligence and other liability producing conduct, the wife plaintiff, Stephanie Tarloski, has suffered the loss of consortium and has been deprived of her husband's love, companionship, comfort, affection, society, morale guidance, intellectual strength and physical assistance.

WHEREFORE, plaintiff, Stephanie Tarloski, claims of all defendants, jointly and/or severally, separate sums in excess of $50,000 in damages, exclusive of interest, costs, damages, pursuant to Pennsylvania Rule of Civil Procedure 238 and attorneys fees and brings this action to recover the same.

**SALTZ, MONGELUZZI, BARRETT & BENDESKY, P.C.**

BY:    */s/ Robert J. Mongeluzzi*
      ROBERT J. MONGELUZZI
      ANDREW R. DUFFY
      JEFFREY P. GOODMAN

      *Attorneys for Plaintiffs, Matthew and Christine McNeal*

**GALFAND BERGER, LLP**

BY: */s/ Richard M. Jurewicz*
      RICHARD M. JUREWICZ

      *Attorney for Plaintiffs, Mark Talorski, Stephanie Talorski*
      *and Sean Flood*

Case ID: 15050270

# VERIFICATION

The averments or denials of fact contained in the foregoing are true based upon the signer's personal knowledge or information and belief. If the foregoing contains averments which are inconsistent in fact, signer has been unable, after reasonable investigation, to ascertain which of the inconsistent averments are true, but signer has knowledge or information sufficient to form a belief that one of them is true. This Verification is made subject to the penalties of the 18 Pa. C.S. §4904, relating to unsworn falsification to authorities.

_/s/ Robert J. Mongeluzzi_
ROBERT J. MONGELUZZI

Date:_____

Case ID: 15050270

# <u>VERIFICATION</u>

I, Richard M. Jurewicz, Esquire am the attorney for Plaintiff(s) and have spoken to Plaintiff(s) about the Complaint, and being authorized to do so, on the basis of information received, verify that the facts and response contained in Plaintiff(s)'s Complaint is true and correct to the best of my knowledge, information and belief.  I understand that all false statements herein are made subject to penalties of 18 C.S. §4904 relating to unsworn falsification to authorities.

BY: _____

RICHARD M. JUREWICZ, ESQUIRE
Attorney for Plaintiff(s)
Attorney I.D. No. 39426
Galfand Berger LLP
1835 Market Street, Suite 2710
Philadelphia, Pa.  19103
(215) 665-1600
rjurewicz@galfandberger.com

Case ID: 15050270