# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MATTHEW MCNEAL,** *et al.*, | |
| **Plaintiffs,** | **CIVIL ACTIONS** |
| **v.** | **NO. 15-03517** |
| | **NO. 15-03534** |
| ***ARCELORMITTAL USA, INC.,*** *et al.,* | |
| **Defendants.** | |

**PAPPERT, J.**                                                   **November 12, 2015**

## MEMORANDUM

Plaintiffs Matthew McNeal ("McNeal"), Sean Flood ("Flood"), and Mark Tarloski ("Tarloski") (collectively "Plaintiffs") filed this lawsuit in the Philadelphia County Court of Common Pleas after they sustained significant injuries at a steel plant owned and operated by defendants ArcelorMittal USA, LLC ("AM USA") and its subsidiary, ArcelorMittal Plate LLC ("AM Plate") (collectively "Defendants").

Defendants removed the lawsuit to this Court on the grounds that federal law preempts Plaintiffs' claims.  Before the Court are three motions: Plaintiffs' motions to remand and Defendants' motion to dismiss the complaint.  All motions present the same issues, namely whether this Court has subject-matter jurisdiction pursuant to Section 301 of the Labor Management Relations Act ("LMRA").  For the reasons set forth below, the Court grants Plaintiffs' motions to remand and denies Defendants' motion to dismiss as moot.

# I.

On May 23, 2013, Plaintiffs were working at the ArcelorMittal Plant in Coatesville, Pennsylvania (the "Steel Plant").  (McNeal Mot. to Remand Exh. D ("Compl.") ¶ 1, ECF No. 27.)  They were helping to load material into an electric furnace when it "exploded and spewed molten metal," causing "severe and debilitating injuries to Plaintiffs."  (*Id.* ¶¶ 1, 3, 4.)

AM USA and AM Plate owned and operated the Steel Plant.  (*Id.* ¶ 48; Mem. Mot. to Dismiss, ECF No. 4.)  AM USA and the United Steelworkers Union were parties to a September 1, 2012 Collective Bargaining Agreement ("CBA"), which was in effect at the time of the explosion.[1]  (Mem. Mot. to Dismiss Exh. A, ECF No. 4.)  The parties dispute who employed Plaintiffs, and who operated and/or controlled the safety operations at the Steel Plant.  (McNeal Mot. to Remand, ECF No. 27.)

Plaintiffs filed a Writ of Summons on May 31, 2013 in the Philadelphia County Court of Common Pleas.  (*Id.* at Exh. B.)  That action was discontinued without prejudice, and Plaintiffs filed a new Writ of Summons on February 3, 2015.  (*Id.* at Exh. C.)  Plaintiffs filed motions for pre-complaint discovery before ultimately filing a complaint on May 22, 2015 against a number of parties, including AM USA and AM Plate.[2]  (*Id.* ¶ 3.)  The allegations were based on the injuries Plaintiffs suffered in the explosion.[3]  The 36-count complaint asserts, among other things, negligence against AM USA and AM Plate for failing to "provide a reasonably safe

---

[1]  AM Plate is also bound by the CBA as an "Affiliate" of AM USA as defined in Section A.  (CBA § A ¶¶ 1–2.)  Plaintiffs were members of the United Steelworkers Union.  (Mem. Opp. Mot. to Remand at 3, ECF No. 48.)

[2]  Other defendants named in the complaint include: Siemens Energy & Automation, Inc., Amerifab, Inc., Process Technology International, Inc., and Frank W. Hake, Inc., among others.  The claims against these other defendants are largely based on liability for their role in designing, assembling, or manufacturing the furnace and its related parts.  (Compl. ¶¶ 57–247.)

[3]  On that same day, Plaintiffs filed an identical complaint in the Court of Common Pleas in a new action docketed as No. 15052703.  (McNeal Mot. to Remand ¶ 3, ECF No. 27.)  Defendants filed a notice of removal in that action as well.  *McNeal et al. v. Arcelormittal USA, Inc. et al.*, 2:15-cv-03534 (ECF No. 1.)  Similar to this case, Defendants filed a motion to dismiss and Plaintiffs filed motions to remand, both premised on the exact same arguments that they make in their motions before the Court here.  *See generally* 2:15-cv-03534 (ECF Nos. 3, 25, 29, 47, 49, 51, 55.)  For the reasons articulated in this Memorandum, and by separate Order, the Court grants Plaintiffs' motions to remand and denies Defendants' motions to dismiss as moot in that action.

environment, free from hazards and unseen dangers and conditions." (Compl. ¶ 54.)  The

negligence count contains 59 separate allegations of negligent conduct against AM USA and AM

Plate, including "failing to adequately maintain the electric arc furnace on the premises" and

"failing to provide proper training to its employees regarding proper safety techniques."

Plaintiffs allege in subparagraph (bbb) that Defendants "violat[ed] the Collective Bargaining

Agreement[.]" (*Id.*)

On June 22, 2015, AM USA and AM Plate removed the case to this Court. (ECF No. 1.)

Defendants contend that Section 301 of the LMRA completely preempts Plaintiffs' common law

negligence claims because those claims are based on an interpretation of the CBA. (*Id.*) Shortly

after filing their notice of removal, Defendants filed a motion to dismiss, arguing that because

Plaintiffs' claims are "inextricably intertwined" with the terms of the CBA, they must be

adjudicated pursuant to the "mandatory grievance and arbitration procedure" as set forth in that

agreement.[4] (ECF No. 4.)  Plaintiffs then filed motions to remand to state court.[5] (ECF Nos. 27,

31.)  Their motions are predicated on the same arguments as their opposition to Defendants'

motion to dismiss:  That their claims against AM USA and AM Plate do not require the

interpretation of the CBA, and are not based on violations of the CBA, but rather violations of

state common law.[6] (ECF No. 27.)  The Court held oral argument on the motions to remand on

November 9, 2015.

---

[4]     The CBA sets forth "contractual administrative procedures require[ing] that an employee first submit their grievance through a Union representative, which grievance will then be submitted to a Grievance Committee and if not resolved, to a Board of Arbitration for an arbitration hearing and decision." (ECF No. 4.)

[5]     McNeal filed a motion to remand on July 21, 2015. (ECF No. 27.)  Flood and Tarloski filed a separate motion to remand on July 23, 2015. (ECF No. 31.)  The arguments set forth in each are the same, and the Court will therefore consider them together.

[6]     Plaintiffs filed a supplemental memorandum after the Court of Common Pleas issued a decision in a similar case involving the same Defendants in *Bowman v. ArcelorMittal USA, LLC et al.*, 2013 No. 3810 (Pa. Com. Pl. Oct. 20, 2015). (ECF Nos. 81.)  In *Bowman*, the court held that there was no Section 301 preemption because the plaintiff's complaint does not require an interpretation of the CBA. Plaintiffs argue that under the decision in *Bowman*, collateral estoppel prevents Defendants from re-litigating whether Section 301 preempts Plaintiffs'

## II.

A civil action brought in a state court may be removed to the district court in the district where the state action is pending if the district court had original jurisdiction over the case. 28 U.S.C. § 1441. The removing party bears the burden of demonstrating that the district court has jurisdiction. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). "The defendant's right to remove and the plaintiff's right to choose the forum are not equal, and uncertainties are resolved in favor of remand." 16 James Wm. Moore et al., Moore's Federal Practice § 107.05 (3d ed. 2003) (internal cross-reference omitted); *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987) ("the removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand."). If there is any doubt as to the propriety of removal, that case should not be removed to federal court. *Brown v. Francis*, 75 F.3d 860, 865 (3d Cir. 1996) (citing *Boyer v. Snap-On tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990); *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1995)).

When the basis of removal is federal question jurisdiction, the propriety of the removal rests on whether plaintiff's well-pleaded complaint raises claims that arise under federal law. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). While a defendant does have a right, given by statute, to remove in certain situations, plaintiff is still the master of his own claim. *Id.* at 391. Under the "well-pleaded complaint rule," federal jurisdiction "exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.* The doctrine of complete preemption, however, serves as an exception to the well-pleaded complaint rule. This doctrine dictates that once an area of state law is preempted by federal law, "any claim

---

claims. (*Id.* at 1.) Defendants correctly respond that the *Bowman* decision is interlocutory and may not be used for collateral estoppel. (ECF No. 82.) The Court will therefore focus on the merits of the arguments regarding Section 301 preemption in this context rather than the purported applicability of the *Bowman* decision.

purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* at 393. "Thus, a state claim may be removed to federal court . . . when a federal statute wholly displaces the state-law cause of action through complete preemption." *Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 8 (2003).

Where a plaintiff alleges a breach of a collective-bargaining agreement, federal jurisdiction is proper since Section 301 of the LMRA confers upon federal courts exclusive jurisdiction to enforce labor contracts. *See* 29 U.S.C. § 185(a), § 301(a). That Section states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

*Id.*[7]

Courts have held that lawsuits based on alleged violations of Section 301 are subject to the complete preemption doctrine and thus removable to federal court. *See Avco Corp. v. International Association of Machinists & Aerospace Workers*, 390 U.S. 557, 559 (1968) ("We conclude that the substantive law to apply in suits under [Section] 301(a) is federal law, which the courts must fashion from the policy of our national labor laws."); *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 104 (1962) ("[W]e cannot but conclude that in enacting [Section] 301 Congress intended doctrines of federal labor law uniformly to prevail over inconsistent local rules."); s*ee also Beidleman v. The Stroh Brewery Co.*, 182 F.3d 225 (3d Cir. 1999) (affirming district court's order denying the plaintiffs' motion to remand) ("[T]he Supreme Court has held

---

[7]   The Parties do not dispute that there is a lack of complete diversity of citizenship. (ECF Nos. 27, 31, 48, 51.)

that any state-law cause of action for violation of a collective bargaining agreement is entirely
preempted by section 301 of the LMRA[ ]").

### III.

Not all disputes "concerning employment, or tangentially involving a provision of a
collective bargaining agreement, [are] pre-empted by [Section] 301 or other provisions of the
federal labor law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 212 (1985).  Rather, in
deciding whether Plaintiffs' claims are within the purview of Section 301, and therefore
removable to federal court, the Court must evaluate whether the state law claims are
"inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213.

In *Allis-Chalmers*, a collective-bargaining agreement between plaintiff's union and his
employer incorporated by reference the terms of an insurance plan covering union workers for
nonoccupational disability benefits. *Id.* at 204.  Plaintiff sued his employer and the
nonoccupational disability insurer alleging bad faith in the handling of a claim under that
insurance plan.  The Supreme Court held that Section 301 preempted plaintiff's claim because it
was "substantially dependent upon analysis of the terms" of the collective bargaining
agreement.[8] *Id.* at 220.  Critical to that determination was an analysis of whether the plaintiff's
claim was based on a "nonnegotiable state-law right" or whether it was based on a consideration
of the terms of the labor contract. *Id*. at 213.  The Supreme Court concluded that it was tied to
consideration of the labor contract and therefore preempted: plaintiff's claim "inevitably"
involved an interpretation of the collective-bargaining agreement since state law allows "parties
to an insurance contract . . . to bargain about what 'reasonable' performance of their contract
obligation entails." *Id.* at 217–18.  The Court noted, however, that "it would be inconsistent with

---

[8]          In *Berda v. CBS, Inc*., 881 F.2d 20, 27 n.8 (3d Cir. 1989), the Third Circuit concluded that the phrase
"inextricably intertwined" was equivalent to "substantial dependence."

congressional intent under [Section 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212.

The Court expounded upon that analysis in *Lingle v. Norge Division of Magic Chef, Inc.* 486 U.S. 399 (1988), where it held that plaintiff's state-law claim was not preempted by Section 301 because it did not require an interpretation of the collective-bargaining agreement.  In *Lingle*, plaintiff-employee brought an action in state court claiming that she was terminated for exercising her rights under the Illinois Workers' Compensation Act.  The issue in the case was ". . . whether an employee covered by a collective-bargaining agreement that provides her with a contractual remedy for discharge may enforce her state-law remedy for retaliatory discharge." *Id.* at 401.  Defendant argued—and both the district court and Court of Appeals agreed—that under *Allis-Chalmers*, Section 301 preempted plaintiff's claim because it was "inextricably intertwined with the collective bargaining provision prohibiting wrongful discharge or discharge without just cause[.]" *Id.* at 402.  The Supreme Court reversed, holding that Section 301 did not preempt plaintiff's claim because it could be resolved without an interpretation of the collective-bargaining agreement.  *Id.* at 409–10.  In distinguishing *Lingle* from *Allis-Chalmers*, the court recognized that the plaintiff in *Lingle* brought her claim pursuant to Illinois state law recognizing the tort of retaliatory discharge for filing a worker's compensation claim.  *Id.* at 406–07.  Thus, unlike *Allis-Chalmers*, the resolution of plaintiff's state-law claim did not "depend[ ] upon the meaning of the collective-bargaining agreement." *Id.* at 405–06.  "[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." *Id* at 409–10.

Our Court has recently addressed Section 301 preemption in *Stellar v. Allied Signal, Inc.*, 2015 WL 1654839 (E.D. Pa. Apr. 15, 2015). In that case, the decedent, an employee of Mack Trucks, died from mesothelioma allegedly caused by asbestos exposure at his workplace. *Id.* at *1. The parties in *Stellar* were governed by the terms of a collective-bargaining agreement entered into between Mack Trucks and the decedent's union. *Id.* at *2. The decedent's estate brought claims against Mack Trucks pursuant to a newly-articulated common law cause of action allowing employees to avoid Pennsylvania's Workers' Compensation bar.[9] *Id* at 6. Consistent with the reasoning in *Lingle*, the court held that Section 301 did not preempt plaintiff's negligence claims because "[t]he Court does not have to interpret any of the clauses in the CBAs in order for Plaintiffs to establish the scope of the duty." *Id.* at *9. The court concluded that "unlike the duty in *Allis-Chalmers*, the duty to provide a safe work environment preceded and exists independent of the CBAs." *Id.* at *7.

The court engaged in a thorough analysis of the Pennsylvania common law negligence claim upon which plaintiff's suit against Mack Trucks was based: the duty to provide a safe work environment. *Id.* at *4–10. After comparing the scope of the employer's duty at common law to the scope of the employer's duties as defined in the collective-bargaining agreement, the court concluded that defendant failed to show: (1) how the collective-bargaining agreement modified the common law duty in any way; or (2) how the collective-bargaining agreement specifically altered duties related to the unsafe work condition at issue in the case—the presence of asbestos in the workplace. *Id.* at *7. As a result, Mack Trucks failed to show "that the scope of the duty

---

[9] In *Tooey v. AK Steel Corp.*, 623 Pa. 60, 82–83 (2013), the Pennsylvania Supreme Court held that employees could pursue common law causes of action against their employers for injuries relating to occupational diseases manifesting more than 300 weeks after the last occupational exposure.

[was] at issue, [or that] the Court [was] required to 'interpret' any of the CBAs' provisions." *Id.* (citations omitted).

## IV.

In this case, Plaintiffs argue that "Defendants removed this action premised on the *exact* argument addressed" in *Stellar*. (McNeal Mot. to Remand ¶ 44, ECF No. 27 (emphasis in original).) Defendants maintain that *Stellar* is distinguishable. (Mem. Opp. Mot. to Remand at 9, ECF No. 48.)

### A.

Defendants contend that, unlike the defendants in *Stellar*, AM USA has no common law duty to provide a safe working environment since only an employer has that duty under common law. *Id.* at 10. Defendants maintain that AM USA was not the Plaintiffs' employer—rather, it was the parent company of AM Plate, an entity that Plaintiffs claim was the actual employer. *Id.* at 3–4, 10. Defendants cite to *International Brotherhood of Electric Workers, AFL-CIO v. Hechler*, 481 U.S. 851, 860 (1987) for the proposition that without a common law duty, such as the one imposed on an employer to ensure a safe workplace, a party other than the employer may only assume a responsibility to employees through contract.[10] As a result, Defendants argue that "the only duties that AM USA could possibly owe to Plaintiffs must be created and defined by the parties' CBA." (Mem. Opp. Mot. to Remand at 10, ECF No. 48.)

Defendants, however, misread *Hechler* and ignore relevant Pennsylvania common law. *Hechler* involved a claim against the plaintiff's union on the basis that the union owed her a duty to ensure that she had essential training and experience before being assigned to work a job that

---

[10]   "Another party, such as a labor union, of course, may assume a responsibility towards employees by accepting a duty of care through a contractual arrangement. If a party breaches a contractual duty, the settled rule under Florida law is that the aggrieved party may bring either an action for breach of contract or a tort action for the injuries suffered as a result of the contractual breach." *Hechler*, 481 U.S. at 860.

9

resulted in her injury.  481 U.S. at 851.  The Supreme Court held that her claims were not "sufficiently independent of the collective-bargaining agreement to withstand the pre-emptive force of § 301."  *Id.* at 853.  Since there was no independent Florida common law duty imposed on "another party [besides the employer], such as a labor union," the defendant's duty was tied directly to the terms of the collective-bargaining agreement, which imposed a duty on the union to monitor the safety and training of its members.  *Id.* at 854.

*Hechler* differs from this case because it involved the common law duties allegedly owed by plaintiff's union, not the plaintiff's employer or the employer's parent company.  In *Hechler*, Florida did not impose common law duties on the union.  Under Pennsylvania common law, however, a parent company does have a duty in some circumstances to provide a safe workplace for the employees of a wholly-owned subsidiary.  In *Kiehl v. Action Manufacturing Co.*, 517 Pa. 183, 190 (1987), the Supreme Court of Pennsylvania held that a employees of a wholly-owned subsidiary may bring a lawsuit against the parent company for its independent acts of negligence. The court refused to allow the parent company to pierce the corporate veil in order to shield itself with Workers' Compensation immunity.  "To do so would permit a parent company to assert itself as an immune unit if sued by an employee of any of its subsidiaries for independant [sic] acts of negligence, and project itself as a separate entity if sued by a member of the general public for the same conduct."  *Id.* at 191–92.

A parent company may owe a duty to the employees of a subsidiary under the theory articulated in *Kiehl*: that they maintain such control over the employee that they are effectively the employer, and thus owe them a common law duty to maintain a safe work environment.  517 Pa. at 188–89.  Relatedly, the Pennsylvania Supreme Court in *Cantwell v. Allegheny County*, 506 Pa. 35, 40 (1984), adopted Section 324A of the Restatement of Torts, which states that a plaintiff

may maintain a cause of action if a defendant had undertaken to perform a specific task, and performed that "undertaking" negligently.[11]  *See Patentas v. United States*, 687 F.2d 707, 716 (3d Cir. 1982) (stating that Section 324A, also known as "the good samaritan rule," requires that "the defendant specifically has undertaken to perform the task that he or she is charged with having performed negligently").  In *Bucks v. Pennfield Corp.*, 4 Pa. D. & C.4th 474, 476 (Com. Pl. 1989), plaintiff brought suit against her employer's parent company, alleging various counts of negligence related to overseeing safety at the plant after her hand was injured in a chicken breast skinning machine.  *Id.* at 474.  Defendant filed a motion for summary judgment, claiming that it was under no duty to supervise the safety of its workplace subsidiaries.  *Id.* at 475.  The Court rejected that argument, citing *Kiehl* and Section 324A: "a parent corporation may be held liable for its independent acts of negligence even though the employee is barred from suing the subsidiary/employer and has been compensated under the Workmen's Compensation Act."  *Id.* at 476 (citing *Kiehl*, 517 Pa. at 183).  The court denied defendant's motion for summary judgment and held that a factual issue remained for the jury regarding whether the defendant undertook a duty pursuant to Section 324A to maintain a safe work environment.  *Id.* at 481.

Since Pennsylvania recognizes an independent common law cause of action against the employer's parent company, Defendants' reliance on *United Steelworkers of America, AFL-CIO-CLC v. Rawson*, 495 U.S. 362 (1990) is misplaced.  In that case, the survivors of four miners

---

[11] Restatement (Second) of Torts § 324A (1965) states:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

killed in a fire sued the decedents' union for failing to properly inspect the mines pursuant to the terms of a collective-bargaining agreement.  *Id.*  The Supreme Court held that the plaintiffs' claim was not independent of the collective-bargaining agreement since the union representatives were only participating in the inspection process pursuant to a term in the labor contract.  *Id.* at 371–72.  "If the Union failed to perform a duty in connection with inspection, it was a duty arising out of the collective-bargaining agreement[,]" not a "duty of reasonable care owed to every person in society."  *Id.* at 371.  Unlike the duty in *Rawson*, which could only arise from the collective-bargaining agreement, the duty at issue here—a parent company's duty to maintain a safe work environment for a subsidiary's employees—is a duty that precedes and stands independent of the CBA under Pennsylvania common law.  *See Kline v. Security Guards, Inc.*, 386 F.3d 246, 261 (3d Cir. 2004) (distinguishing *Hechler* and *Rawson*) ("In this case, however, Appellant's claims did not invoke any duty of care prescribed by the CBA, and no consultation with the CBA is necessary in order to define the scope of the duties alleged to have been breached."); *Stellar*, 2015 WL 1654839 at *10 ("Again, the duty alleged in *Rawson* did not exist independent of the CBA.  For the same reason as in *Hechler*, the instant case is distinguishable.")

Plaintiffs state that a "critical dispute will be litigated . . . over who employed Plaintiffs and who operated and/or controlled the safety operations at the steel plant."  (McNeal Mot. to Remand ¶ 6, ECF No. 27.)  That there is a possibility that Plaintiffs cannot ultimately sustain a common law claim under *Kiehl* because AM USA did not maintain sufficient control over the Steel Plant or did not undertake a duty to provide a safe work environment does not provide a proper basis for finding federal jurisdiction.  "[I]f a claim is supported not only by a theory establishing federal subject matter jurisdiction but also by an alternative theory which would not establish such jurisdiction, then federal subject matter jurisdiction does not exist."  *Ratmansky ex*

*rel. Ratmansky v. Plymouth House Nursing Home, Inc.*, 2005 WL 770628, at *5 (E.D. Pa. Apr. 5, 2005) (citing *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 153 (4th Cir. 1994) (internal quotation marks omitted) (discussing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800 (1998)).  This is consistent with the well-acknowledged principle that "[t]he defendant's right to remove and the plaintiff's right to choose the forum are not equal, and uncertainties are resolved in favor of remand."  16 James Wm. Moore et al., Moore's Federal Practice § 107.05 (3d ed. 2003) (internal cross-reference omitted); *see Steel Valley Auth.*, 809 F.2d at 1010.

Section 301 therefore does not preempt Plaintiffs' claims because Plaintiffs *could* sustain a common law cause of action against AM USA.   In *Stellar*, 2015 WL 1654839, at * 6, this Court recognized the *Tooey* decision as an "avenue by which individuals . . . can proceed at common law outside the scope of the [Workers' Compensation Act]."  Similarly here, the *Kiehl* decision provides Plaintiffs with an "avenue" to proceed against AM USA.  Plaintiffs may or may not be able to demonstrate that AM USA undertook a duty, separate from the CBA, to provide a safe work environment.  It is not appropriate, however, to resolve that issue at this stage and it would be incorrect for the Court to retain jurisdiction where it is possible that an independent state law claim could stand.  *See Bucks*, 4 Pa. D. & C.4th at 481 ("It will be for the jury to determine where ultimate responsibility for safety rested and whether the duty of the corporate safety committee to oversee was a specific undertaking.").

**B.**

When an independent common law duty exists, a court may still find Section 301 preemption if the collective-bargaining agreement modifies that duty in any way.  *See Stellar*, 2015 WL 1654839, at *7 ("Defendant has not pointed to any portion of the CBAs that somehow

modifies—either by enlarging, diminishing or even refining—the duty imposed by the common law.")  Even if Defendants were able to identify a section of the CBA that altered the common law, that is still not dispositive of Section 301 preemption: "employees have the option of vindicating their interests by means of either a section 301 action *or* an action brought under state law, as long as the state-law action as-pleaded does not require interpretation of the collective bargaining contract."  *Voilas v. Gen. Motors Corp.*, 170 F.3d 367, 373–74 (3d Cir. 1999) (emphasis added).  Here, Plaintiffs' claims do not call for an interpretation of the CBA.  Nor does the complaint attempt to relabel contract claims as common law tort claims.   Rather, the claims are based on independent state law causes of action.

Defendants cite to *Stellar* to argue that since the CBA defines the "scope" of their duties, it is necessary for this Court to interpret and analyze the CBA.  (Mem. Opp. Mot. to Remand at 11.)  *Stellar*, however, rejected this precise argument: "Defendants' argument that the Court will have to analyze the CBAs to determine the 'scope' of the duty is not persuasive."  2015 WL 1654839, at *7.  Rather, as "masters of the complaint," Plaintiffs have the right to choose which rights to vindicate: those granted by the common law or those granted by the CBA.  *See Caterpillar*, 482 U.S. at 394–95 ("It is true that respondents . . . possessed substantial rights under the collective agreement, and could have brought suit under § 301.  As masters of the complaint, however, they chose not to do so.");  *see also Allis-Chalmers*, 471 U.S. at 212 ("it would be inconsistent with congressional intent under [Section 301] to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.").  Contrary to Defendants' position, an interpretation of the CBA is not necessary to adjudicate Plaintiffs' claims.  Rather, Plaintiffs' claims rest on duties that "preceded and exist[ ] independent" of any duties provided in the CBA.  *Stellar*, 2015 WL 1654839, at *7.

14

Defendants further argue that Plaintiffs' claims are preempted because they are based on duties owed under the CBA. This argument that plaintiffs are "relabeling" a breach of contract claim as a tort claim is also unavailing. (Mem. Opp. Mot. to Remand at 2, ECF No. 48.) Defendants present a number of instances where "Plaintiffs' state law claims directly mirror the [ ] Defendants' alleged obligations under the CBA." (*Id*. at 17.) "A comparison of the relevant provisions of Article Three of the CBA to Plaintiffs' allegations of negligence in Count 1 readily demonstrates how inextricably intertwined they all are[.]" (*Id*. at 14.) It is insufficient, however, for Defendants to merely draw parallels between the CBA and Plaintiffs' complaint. This is the same argument addressed and rejected in *Kline v. Security Guards, Inc.*, 386 F.3d 246, 255–56 (3d Cir. 2004). "[T]he essential question is not whether Appellants' claims relate to a subject . . . contemplated by the CBA. . . . Rather, the dispositive question here is whether Appellants' state claims require any *interpretation* of a provision of the CBA." *Id.* (emphasis in original) (citing *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 229 (3d Cir. 1995)). *See Lingle*, 486 U.S. at 408–09 ("We agree with the court's explanation that the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause. But we disagree with the court's conclusion that such parallelism renders the state-law analysis dependent upon the contractual analysis."). This Court similarly rejected an almost identical argument in *Stellar*, 2015 WL 1654839, at *8, when defendant cited "to various portions of the CBAs relating to, *inter alia*, workplace health and safety[.]" As the Third Circuit stated in *Kline*, 386 F.3d at 256, "[a] finding of § 301 preemption is not mandated simply by the contention that [Plaintiffs'] state law claims 'necessarily implicate' the CBA." Rather than demonstrate how the Plaintiffs' claims require an interpretation of the CBA,

Defendants merely identify the "parallelism" between the CBA and the Plaintiffs' complaint. That is insufficient to demonstrate Section 301 preemption.

Finally, Plaintiffs' claims are not based on the labor contract simply because of a reference to the CBA in the complaint.  (*See* Compl. ¶ 54(bbb).  Defendants' argue that Plaintiffs' claims are premised on the CBA since Plaintiffs "explicitly state in their Complaint that [Defendants] were negligent for 'violating the Collective Bargaining Agreement.'"  (Mem. Opp. Mot. to Remand at 14, ECF No. 48.)  The mere mention of the CBA in the complaint, or even the need to reference it in the course of adjudicating the claim, however, is insufficient to sustain complete preemption under Section 301.  "The bare fact that the Collective Bargaining Agreement is mentioned in the Complaint's allegations is insufficient to preempt the claims." *Phillips v. Selig*, 157 F. Supp. 2d 419, 427 (E.D. Pa. 2001) (citing *Beidleman*, 182 F.3d at 232). "The fact that a collective bargaining agreement was part of the context in which an employee's claim must be addressed [ ] did not trigger complete preemption in the absence of some substantial dispute over the meaning of the collective bargaining agreement." *Kline*, 386 F.3d at 257.  Defendants' reliance on the reference to the CBA in the complaint is insufficient to maintain Section 301 preemption.  The lone reference to the CBA appears in one subparagraph out of the 59 negligent actions alleged against Defendants, all otherwise ostensibly rooted in common law.  (Compl. ¶ 54(bbb).)  Plaintiffs maintain that the inclusion of this reference "is to demonstrate that AM USA . . . exercised control of the steel plant's safety operations."  (McNeal Mot. to Remand at 35, ECF No. 27.)  Regardless of the intent or effect of its inclusion, one reference to the CBA does not transform Plaintiffs' 82-page complaint into a Section 301 claim.

**V.**

Plaintiffs pled a state law claim for negligence against Defendants that is independent from the duties articulated in the CBA: under Pennsylvania common law, the parent company may owe a duty to provide a safe work environment to the employees of a wholly-owned subsidiary.  Defendants have failed to show that the Court will have to interpret any of the terms of the CBA in order to adjudicate Plaintiffs' claims, or that Plaintiffs' claims are otherwise rooted in the contract.  For these reasons, Plaintiffs' motions to remand are granted, and Defendants' motion to dismiss is denied as moot.